HENRY FITZGIBBON, Appellee, v. WESTERN DREDGING COMPANY ET AL., Appellants.

**Drainage:** CONSTRUCTION OF DITCH: INJURY TO ADJACENT LAND: LIABILITY OF CONTRACTOR. In excavating a drainage ditch in a district established by public authority the contractor is required to use reasonable care to avoid injury to adjacent lands; but he is not liable for injury the natural result of carrying the plan of drainage into execution

**Same:** MEANS EMPLOYED FOR EXCAVATING. In constructing a public drainage ditch the contractor may employ the means and method of excavation usually and generally approved for that kind of work, where there is no provision otherwise in the contract.

**Same.** Where the plan of a public drainage ditch cuts across the course of a stream, but there was no provision of the contract requiring the contractor to take care of surplus water by means of a dam or by-pass, he was not liable for injury to adjacent lands on account of overflow from the ditch of water naturally accumulating therein, where he followed the plan furnished, used the usual machinery for such work and by no act or omission of his own increased the flow.

*Appeal from Harrison District Court.*—HON. A. B. THORNELL, Judge.

TUESDAY, SEPTEMBER 29, 1908.

REHEARING DENIED SATURDAY, FEBRUARY 20, 1909.

ACTION at law to recover damages to crops by overflow occasioned by the alleged negligence of defendants. Judgment for plaintiff, and defendants appeal.—*Reversed.*

*C. W. Kellogg,* for appellants.

*J. S. Dewell,* for appellee.

WEAVER, J.—The counties of Harrison and Pottawattamie, Iowa, having by appropriate actions of their respective boards of supervisors established a drainage district embracing lands in both jurisdictions, the contract for excavating the required ditch was let to the defendants. At the point involved in this controversy the course of the ditch is along the general course of a waterway known as "Willow creek," but, as said channel is very crooked, the ditch in places cuts across its loops and bends, shortening the route of its flow. The general situation and the location of plaintiff's land with reference to the ditch are made reasonably clear in the accompanying plat:

(Ex. 3.)

Plaintiff's demand for a recovery in this action is based upon the theory that defendant in constructing the ditch and working in a southwesterly direction down the course of the stream cut through its banks at the point marked A on the plat, and in so doing negligently obstructed the channel, and after cutting through the south-

westerly bank failed to restore or close it against the escape of the waters of the creek into the ditch, and failed to protect the adjacent lands from the resulting overflow by providing an outlet or escape therefor into the creek below in advance of the dredge or by other reasonable means protecting such lands from injury. It is further claimed that, by reason of such negligence, the water from the creek swollen by storm passed into the ditch and overflowed its banks, and extended westward across the land of an intervening owner to the land of the plaintiff, and caused the injury of which complaint is made. The allegations of negligence and damage are denied by the plaintiff. There is substantial harmony in the testimony as to many of the material facts to be considered, and the arguments of counsel are directed in the main to questions of law which they believe to be involved in the appeal. Of these we think it necessary to discuss the following only. Among other things, the court charged the jury as follows:

As before stated, it appears without conflict that the defendants were not acting wrongfully or illegally in digging the ditch in question, but were doing it under the authority of law; and it further appears that at the time of the flood in question, and at the time the defendants cut the banks of Willow creek, the ditch was being dug by defendants on the line and substantially according to the plan adopted by the counties in providing for said ditch. Under such circumstances, the defendants had the right to cut the banks of Willow creek, and their act in so doing was not illegal nor negligent. But if when taking into account, so far as shown by the evidence, the flow of water in the creek, and all that was known to the defendants, or ought to have been known to them in the exercise of reasonable care upon their part, as to what floods were likely to occur along said stream and ditch before they would again reach said creek at a point lower down in the construction of said ditch, it appears from the evidence that reasonable prudence would have dictated

when they cut the bank of the creek and crossed same with the ditch, that they should have closed up the opening thus made in the bank of the creek with a dam, or should have provided some outlet ahead of their dredge boat to carry the flood waters likely to come down the ditch, and thereby prevent same from flooding the lands adjoining or near the ditch, then it was their duty to do so, and if, under such circumstances, it appears that they failed to build such dam or to provide such outlet, such failure on their part would constitute negligence.

The central thought of this instruction, that in performing their contract it was defendant's duty to use reasonable care in the manner and method of its performance to avoid injury to the adjacent lands, is undoubtedly correct. It is equally true that, the ditch being constructed by the State acting through its local agencies in the exercise of its power of eminent domain, the contractor and laborers who do the work of actual excavation are not liable for damages which naturally result to said lands from carrying the scheme or plan of drainage into execution. In other words, if the contractor or laborer makes the ditch substantially in accordance with the plan furnished him, taking reasonable care to avoid doing or causing unnecessary injury to adjacent lands, he is not charged with responsibility for injurious effects which naturally follow the authorized improvement.

1. DRAINAGE: construction of ditch: injury to adjacent land: liability of contractor.

In the absence of any provision to the contrary in the contract, it will also be conceded that the contractor may employ means and methods of excavation which are usual and approved generally among persons performing that kind of service. As is well known, drainage ditches of any considerable proportions in this State are quite generally constructed by the use of steam dredges mounted on a boat or raft working from the highest elevation on the route down grade in the direction of the outlet, the boat or raft float-

2. SAME: means employed for excavating.

ing upon the water which accumulates in the ditch as the work advances. Naturally the further the work progresses the larger the body of water which may be expected to accumulate behind the dredge, and, where many ponds or swampy places are tapped, it is inevitable that some of the water so collected will fill or overflow the banks of the ditch before the pressure is relieved by the completion of the excavation to some outlet. For damages caused by such overflow, the contractor under the rule already stated is not to be held liable without it being shown that such overflow was caused or augmented by some negligent act or omission on his part. There is no contract relation express or implied between him and the landowner, and the measure of his duty in the premises is found in the general rule which binds each person to so use and enjoy his own rights and privileges as to avoid injury to his neighbor. We can conceive that if it were alleged, and there were any evidence to sustain the allegation that it was customary or usual for contractors under such circumstances to guard against the excessive accumulation of water in the ditch by damming the flow or by digging a by-pass ahead of the dredge to some outlet, and that the contract was made with reference to such custom or usage, a very different conclusion might be reached. But there is neither allegation nor evidence to that effect in the case before us, and upon such a record we are persuaded that failure to make use of this expedient can not be held to be negligence.

The defendants were employed to construct a ditch, an open channel for the flow of water, and not to dam the flow thus provided for. The plan required the ditch to 3. Same. be cut across the course of Willow creek at the particular point, and the fact that water from said channel would run into the ditch and follow the course of the dredge must have been anticipated by all parties concerned. In the very nature of

things, having cut through the banks of the stream, it
would be impracticable to dam the opening thus made
until the dredge had proceeded far enough for the ·boat
or raft carrying the machinery to pass through, and the
time required to thereafter construct a dam may have been
sufficient to carry the dredge forward to the outlet pro-
vided by the next crossing of the course of the stream.
A dam across' the ditch which would have been sufficient
to protect the plaintiff's land might have served to overflow
and injure the land of some other proprietor.  If the con-
tractors are to · be held to care for the surplus water in
the ditch by constructing dams and digging by-passes, it
will be readily seen that such responsibility will often
involve largely increased liability, and necessitate a cor-
responding increase in the compensation to be paid for
these works of public improvement.  It would doubtless
be competent for the board of supervisors in letting the
contract to provide that the contractors shall, by the con-
struction of dams and dikes or other suitable devices, pre-
vent the overflow of water from the ditch to adjacent
lands, and possibly this provision would be available to
the owner of such lands in an action *ex contractu* under a
principle analogous to that which was applied in *Hipwell
v. Surety Co.,* 130 Iowa, 656.  Where such condition is
exacted, the contractor is forewarned and makes his bid
with the obligation in view; but, where no such condition
is provided, and the contractor undertakes simply to ex-
cavate the ditch on the line according to the plan laid down
for his guidance, he does not in our judgment assume any
liability for the care of the water naturally accumulating
behind his dredge.  He must not, of course, by his own
negligent act or omission increase the amount of water
in the ditch beyond that which naturally accumulates
from its construction according to· the authorized plan, nor
by his negligent opening or breaking down or weakening
the banks contribute to the escape of the water to the in-

jury of others, and for failure of duty in this respect his liability can not be questioned. But, in the absence of any other showing than the undertaking to excavate the ditch according to a given plan, we think the contractor is under no duty to protect adjacent lands against overflow from such ditch by diking its banks or damming the channel which he makes or by constructing by-passes to carry off the floods. If a city orders the grading of a street upon a plan the natural effect of which is to arrest the escape of surface water, and set it back upon the property of adjacent owners, the contractor or employee who performs such work according to the plan is not liable for the injuries resulting, unless he contributes thereto by some negligence on his part. We think no one would contend that he must take notice of the defects in said plan and provide means by which to protect the adjacent property against injury arising from the fault of the city in planning the improvement. *Pearson v. Zable,* 78 Ky. 170; *Shaw v. Crocker,* 42 Cal. 435. If this be true, and we doubt if any authority can be cited to the contrary, we can conceive of no reason for applying any different rule to cases like the one now before us. *Chapel v. Smith,* 80 Mich. 100 (45 N. W. 69).

The trial court in the case at bar correctly held as a matter of law that the defendants had the lawful right to excavate the ditch across the course of the stream, and that at the time of the injury complained of they were doing said work in substantial accordance with the authorized plan. There was also no error in stating that, in performing their said contract, the defendants were bound to exercise reasonable care to avoid the unnecessary flooding of the adjacent lands, but we hold that no case was made by the plaintiff which would justify the jury in charging defendant with negligence in failing to intercept and prevent such flow by damming the ditch behind the dredge, or by constructing some temporary ditch or trench

to carry off the surplus waters, and that the submission of such question to the jury was prejudicial error.

Other alleged errors are not likely to arise on a retrial, and we shall not discuss them.

For the reasons stated, a new trial must be ordered. The judgment of the district court is therefore *reversed.*