T. J. GREENWELL et al., Respondents, v. A. V. WILLS & SONS, and DRAINAGE DISTRICT NO. 6, Appellants.

Springfield Court of Appeals, March 11, 1922.

1. **DRAINS: Contractors Held not Liable for Damage to Crops from Retardation of Flow of Water in Absence of Showing of Negligence.** Where construction of dam was necessary to enlargement of drainage ditch, and the dam and spillways around it were constructed by drainage contractors under the direction of the engineer of the district authorized by law to control such matters, and in the manner ordered by the county court upon the petition of the taxpayers of the district, the contractors were not liable for damages to crops caused by retardation of flow of water by reason of construction of dam, in the absence of a showing that contractors were negligent, and that such negligence was the proximate cause of the damage.

2. **CONSTITUTIONAL LAW: Provision Precluding the Taking or Damaging of Private Property Without Just Compensation, Held Self-executing.** Constitution, article 2, section 21, providing that private property shall not be taken or damaged for public use without just compensation, is self-enforcing, independent of any statute.

3. **DRAINS: District Can be Sued for Damages to Land Outside Thereof, but not for Damage to Land Inside of District Caused by the Proper Prosecution of the Work.** Under Constitution article 2, section 21, prohibiting the taking or damaging of private property without just compensation, owner of property outside of drainage

district may sue district for damages sustained in the performance of the work, but owner of land or crops in district damaged by the proper prosecution of the work cannot recover damages in suit against the district in the absence of a statute authorizing such suit; such damages being awarded and adjudged in the organization of the distrct.

4. ———: **Organization of Drainage District not Subject to Collateral Attack.** The legality of the organization of drainage district could not be questioned in suit against distrct and drainage contractors for damages to crops from retardation of flow of water, since a drainage district is a municipal corporation, and the legality of its organization cannot be collaterally attacked.

Appeal from the Pemiscot County Circuit Court.—*Hon. Sterling H. McCarty,* Judge.

REVERSED.

*Ward & Reeves* and *C. E. Bragg* for appellants.

(1) ''Where specific acts of negligence are pleaded it devolves upon plaintiff to prove the acts of negligence pleaded; and if plaintiffs recover at all, it must be upon the specific acts of negligence pleaded, and not otherwise.'' Orcutt v. Century Bldg., 201 Mo. 443; Price v. Railway Co., 72 Mo. 414; Bunyon v. Railway Co., 177 Mo. 19; Hamilton v. Railway Co., 114 Mo. App. 508; McGrath v. Railway Co., 197 Mo. 105; West v. Holliday, 195 S. W. (Mo. App.) 403; Winkleblack v. Mfg. Co., 187 S. W. (Mo. App.) 95; Reid v. Schaff, 210 S. W. (Mo. App.) 85; Zasemowich v. Mfg. Co., 213 S. W. (Mo.) 799. (2) Plaintiff was permitted to tell what some fellow, being one of the men operating the boat, said to him as to how come the boat to sink. It was not shown who this man was, what capacity he represented these copartners in, nor that it was a part of the *res gestae,* nor whether the fellow was on the boat at the time or not, when he made the statement, and his testimony was therefore hearsay and incompetent. Rooker v. Railway Co., 226 S. W. (Mo. App.) 69; Robinson v. Busch, 199 Mo. App. 184; Yarbro v. Wis. Lbr. Co., 211 S. W. (Mo. App. 713; Redden v. Railway

Co., 185 Mo. 11; Cross v. Coal Co., 186 S. W. (Mo. App.) 529; State ex rel v. Reynolds, 208 S. W. (Mo. App.) 620. (3) It submits the dredge boat sinking because of negligence, when there is no proof at all of any negligence on that behalf. "And then placed two solid dirt embankments across said ditch, thereby completely stopping the flow of water through said ditch, until the lands cultivated by plaintiffs in corn were again completely submerged." "Thereby completely stopping the flow of water," and "that the corn was again completely submerged" are facts assumed as true, and makes the instruction erroneous in that behalf. Henson v. City, 210 S. W. 13; Hunt v. City, 211 S. W. 673; Dunn v. Railway Co., 199 Mo. App. 621; Oliver v. Railway Co., 211 S. W. 619; Kepley v. Realty Co.,—Mo. App.,—200 S. W. 750; Rappaport v. Roberts,—Mo. App.,—203 S. W. 676; Muller v. Marvey, 199 Mo. App. 627. (4) Said instruction is wholly erroneous in not submitting to the jury the hypothesis of negligence embraced in the petition and the evidence. Boles v. Dunham,—Mo. App.,—208 S. W. 480; Simms v. Dunham, 203 S. W. 652; Hays v. Railway Co., 211 S. W. 561; Davis v. Railway Co., 199 Mo. App. 621; Kern v. Harvey, 200 Mo. App. 433; State ex rel. v. Ellison, 270 Mo. 645, 653; McGinnis v. Railway Co., 195 Mo. App. 390.

*Sheppard & Oliver* for respondents.

(1) The facts constituting the negligence must be left to the jury, and if the facts which the law pronounces as negligence are found in favor of the plaintiff that is sufficient. And that seems to be the holdings of the Missouri authorities along this line. Brash v. City of St. Louis, 161 Mo. 433; Springfield Crystalized Egg Co. v. Springfield I. & R. Co., 259 Mo. 664; H. A. Johnson & Co. v. Springfield I. & R. Co., 127 S. W. 692; Franberger v. Chicago and A. R. Co., 250 Mo. 46; Thacle v. Marion Planing Mill Co., 165 Mo. App. 707.

BRADLEY, J.—T. J. and Chas. A. Greenwell sued to recover damages to their crops alleged to have been caused by water negligently held on their lands. The cause was tried to a jury and resulted in a judgment for plaintiffs in the sum of $710, from which judgment defendants appealed.

Plaintiffs allege two grounds of negligence: (1) Negligence in and about constructing a dam across the ditch; and (2) in so negligently operating the boat that it sank, and the dams necessary to raise it caused or contributed to the damage. Plaintiffs state these grounds in their petition substantially as follows: (1) That during the times mentioned defendant drainage district was enlarging drainage ditch No. 6 and defendants A. V. Wills & Sons were drainage contractors and as such contractors entered into a contract for enlarging said drainage ditch No. 6; that said drainage ditch No. 6 had theretofore been constructed, and lateral ditches leading from the land adjacent thereto had been constructed so as to drain the water from the adjacent land into said drainage ditch No. 6; that the lands mentioned were drained prior to the time complained of; that defendants in doing the work of enlarging said drainage ditch No. 6 placed a dam across said ditch so as to completely prevent the water from flowing down said ditch as it had previously done without leaving any outlet for the water which had previously flowed down said ditch, and negligently and carelessly kept said dam in said ditch for a great period of time until the land cultivated by plaintiffs for the season of 1919 was completely flooded; that after the lands were flooded defendants cut a passageway around the dam so as to let part of the water that continued to accumulate in said ditch pass around said dam, but there was not sufficient passageway to lower and take the water off the land.

(2) That it was the duty of defendants in enlarging said dainage ditch to do the work in a reasonably expeditions manner, and at all times leave sufficient passageway for the water so as to prevent the water

from flowing out of the laterals and overflow the land cultivated by plaintiffs and others; that defendant while doing the work of enlarging said ditch so negligently and carelessly conducted the management of the dredge boat with which said drainage ditch was being dug as to let said dredge boat sink, and in order to raise and repair said dredge boat defendants constructed two more dams across said drainage ditch, one just behind the dredge boat that was sunk, and one just in front, and used a large pump for the purpose of pumping out the water between the two dams so that they could get to the sunken boat and repair it; that the last two dams completely cut off all flow of water down said drainage ditch, and caused the water that would otherwise have flowed around the first dam from flowing down said ditch, and caused all of the water thus accumulated to spread out over the land cultivated by plaintiffs; that defendants through the negligent manner in which they conducted the enlarging of said drainage ditch and repair of said dredge boat permitted the last two mentioned dams to remain across said ditch for near two months, so that all drainage was closed for about that period of time; that the passageway left for the water around the original dam being small, when the last two dams were opened the water that had accumulated on the land cultivated by plaintiffs could not run through said opening sufficiently fast to lower the water and take it off of said land until plaintiffs' corn had been damaged.

Wills & Sons answered by general denial. The district answered by a general denial, and a defense that Wills & Sons were independent contractors, and that in no event was it liable. No reply seems to have been filed to the new matter in the district's answer, but no point is made in that respect.

Defendants brief their case separately, and make separate assignments, but in the main to the same effect. These assignments may be stated thus: (1) That the court erred in failing to direct a verdict for defendants;

(2) that the court erred in admitting evidence; (3) that the court erred in giving and refusing certain instructions. The defendants are interested in common for the most part. Their interest do not run counter except on the issue of an independent contractor, but the view we take of this cause makes it unnecessary to consider any except the first assignment.

Should the court have directed a verdict for both defendants? The ditch in the drainage district was being enlarged, cleaned, etc., under sections 4531 et seq., Revised Statutes 1919. Wills & Sons were awarded the contract for a portion of this work. The district was several miles in length, and the original ditch had been dug for several years. The old ditch was twenty feet wide with a ten or twelve foot bottom, and the new ditch was forty feet wide with a twenty foot bottom.

The clauses and provisions of the contract under which Wills & Sons were working which we think are pertinent here are as follows: "The ditches herein provided for shall be constructed with machinery suitable for the work, dug to the depth and bottom width as directed by the engineer, and have side slopes as near as may be of one horizontal to one vertical. The excavated material shall be deposited about equally on each side of the ditches, in even uniform spoilbanks, leaving berms of such width between the outer slopes of the ditches and the spoil-banks as shown on the plans; provided, that unequal distribution of spoil-banks may be made by the contractor upon the written consent of the engineer. In the reconstruction or deepening of ditches all excavated material shall be deposited so that none of the material shall fall or flow upon the berm space as required by the plans and specifications.

The contractor will be permitted to hold water in the ditches for the purpose of floating dredeges at such elevations as the engineer from time to time may direct.

Where ditches pass through caving ground the contractor will be required to continue work with the equipment in use thereon until such time as the engineer shall

conclude and advise the contractor that it is not practical to complete the work, as per plans, after which time the contractor may be relieved of further responsibility for such portion of the work, and he will be paid for the portion of the required section left available; the district will be free to arrange with another contractor, or to provide other means for the construction of said work, or the engineer may require the contractor under this contract to excavate and construct a detour ditch at the contract price, or, if directed so to do, the said contractor shall furnish the labor and equipment and do such work in connection with such caving ground as may be required by the engineer to complete such portion of the work on the cost plus percentage basis, as herein provided for extra work.

Openings shall be left in the spoil-bank for admission of surface water on each side of the ditches at all depressions where water might accumulate and at such other places as the engineer may direct.

Wherever directed so to do by the engineer the contractor shall construct surface water inlets for the control of the flow of water from the surface ground, or from a lateral into a ditch. For such work the contractor will be compensated either at an agreed price or on the cost plus percentage basis, as herein provided for extra work.''

The excavated material taken from the old ditch had to be so placed that none would run back into the berms or into the ditch, and in order to avoid this such material had to be placed on the opposite sides of the old spoil-banks. The work was done with a floating dredge approved by the engineer of the district, and this boat had to be of such size as was required for that work, and the reach of the boom had to be such that excavated material could be placed over the old spoil-banks, and not on them. This reach was to some extent affected by the draw of the boat and the depth of the water in the ditch. The old ditch had filled and there was not a great deal of water in it, and it was failing to properly drain the lands taxed

in the district. To do the work of enlarging, cleaning and redigging, it was necessary to build a dam across the old ditch below the boat in order to furnish sufficient water to float the boat.

This ditch ran in southeast directions across the northeast corner of the lands plaintiffs cultivated in 1919. The farm is practically level, except for low places here and there, and there are eleven private ditches which have been constructed on the farm from time to time. These private ditches drain in all directions, some north, some south, some east and some west, etc., but the waters therefrom finally find their way to No. 6.

Plaintiffs' evidence tends to show that the main dam was constructed in August or September, 1919, and remained until about January 1, 1920; that the dam to some extent retarded the flow of water down the ditch. Plaintiff, Chas. A. Greenwell, testified in part as follows:

"The dam prevented the water from going down the ditch; at that time there was no outlet around the dam. I saw the parties that placed the dam there, but didn't know their names. It was some of the employees of the parties that went ahead and enlarged the ditch. I don't know the exact date after the dam was placed there until they cut this dam away—it was after the land was already flooded. When they put the leadway or ditch around it the water to some extent was lowered. It did not take the water entirely off my corn so we could get in there and gather it." Plaintiffs used many other witnesses, but no one said more towards the establishment of plaintiffs' case than the evidence quoted. Plaintiffs recognize that a dam was necessary. Chas. A. Greenwell further says: "Before this dam was put in this ditch didn't have much water in it, not enough to float a big boat, and the ditch being open all the way down to the south end of the county, before they could float the dredge boat they had to have someting to hold the water up, and therefore they constructed this main dam. I said I didn't know the exact date when this dam was constructed, but it was in

August or September, I know it was no later than September, at least I am pretty sure it wasn't any later than September. The water came over our land after we had several large rains, and it was something near November. It rained a good deal. We had lots of rain, but this land would have drained the water off if they had had the dam out of there, as it had before; they had the dam in there and had more water than was necessary to float the boat. If they had an opening around there large enough to carry the water sufficiently they would have had, I think, plenty of water to float their boat and relieved us more than they did. I am not an engineer or ditch man."

Defendants offered evidence to show that the main dam was constructed October 14, 1919, and went out on December 29th. That the rainfall in November in that locality was 7.23 inches; in December 4.30 inches, and in January 8.01 inches; that this was about double the normal rainfall; that the construction of the main dam and spillways was under the direction of the engineer; that the dam was built no higher than was directed by the engineer, and retained no longer than was necessary in order to properly perform the work of redigging the ditch; that the spillways were as directed by the engineer; that the dam and spillways were in all particulars as directed by the engineer.

The improvement in progress which plaintiffs claim damaged them was intended for the ultimate benefit of the land they were cultivating. The old ditch was not performing the service for which the taxpayers were paying. Plaintiffs knew that this work was in progress. They knew that a dam would have to be put in the old ditch to supply sufficient water to float the dredge. The work was being done in a manner recognized by the law and approved and ordered by the county court upon the petition of the taxpayers of the district. The dam and spillways around it were constructed under the direction of the engineer of the district who had the authority under the law and the contract to direct and control such

matters. Plaintiffs concede that *a dam* was necessary, that the work could not be done without it. They knew that such a dam as required would to some extent retard the flow of water down the ditch. It also appears that just about plaintiffs' farm there was a sand ridge, and that considerable trouble and duplication of work, backing up, caving, etc., were encountered in completing the work through this ridge. All this required sufficient water in the ditch to properly do the work.

The only theory on which plaintiffs could recover against the contractors would be that the dam or spillways were negligently constructed so that more water was held up than was necessary and that by reason thereof their crops were damaged; or that through or by unjustifiable delays or slow progress of work the dam was retained an unreasonable length of time and that by reason of such unreasonable retention their crops were damaged. In other words before plaintiffs can recover against the contractors they must show that the things of which they complain were brought about by negligence, and that such negligence was the proximate cause of their injury. With these fundamental principles in mind there can only be one just conclusion drawn with respect to plaintiffs' case, and that is that this record utterly fails to show that defendants or either of them, were guilty of negligence in constructing the main dam and spillways or in the length of time the dam was retained. The fact that the improvement was projected presupposes that the lands upon which plaintiffs grew their crops were not properly drained. If, therefore, plaintiffs' damage was merely a result of the proper prosecution thereof, then there can be no recovery on any theory. Certainly the district and its contractor, Wills & Sons, had the right to enter upon the execution of the work, and there was bound to be some retardation of the flow of the water down the ditch when the dam was put in and the work begun. A contractor excavating a ditch for a drainage district is liable for negligence in the performance of the work, but is not liable for in-

juries naturally resulting to adjacent lands· in the district from carrying out and following the plan of drainage where he exercises reasonable care. [19 C. J. P. 711; Steele v. Pollard, 101 Mo. App. 684, 74 S. W. 373; Mitchell v. Hahn, 131 Ark. 286, 198 S. W. 528; Foohey Dredging Co. v. Mabin, 118 Ark. 1, 175 S. W. 400; Foohey Dredging Co. v. Lovewell, 170 S. W. (Ark.) 1012; Wood v. Conway County Drain. Dist. No. 2, 110 Ark. 416, 161 S. W. 1057; Perkins v. Blauth, 163 Cal. 782, 127 Pac. 50; Fitzgibbon v. Western Dredging Co., 141 Iowa, 328, 117 N. W. 878; Kochtitzky v. Bond, 128 Ark. 255, 194 S. W. 8; Moore v. Swamp Dredging Co. et al., 88 So. (Miss.) 522.] In the last cited case the facts are: Plaintiff filed in the circuit court suit for damages for the value of thirty-five acres of alfalfa and fourteen acres of corn alleged to have been damaged by water caused by the damming of a canal by the defendant. The declaration alleged the organization of the district several years prior to the alleged injury; that the district was organized and operated under the law; that the commissioners of the district, acting in their official capacity, enterel into a contract with defendant to clean out and deepen and widen the.canal, which ran through the land of plaintiff; that in accordance with this contract the defendant in performance of the work dammed up the canal, and placed its dredge boat therein for the purpose of performing the work, by virtue of which the canal was flooded with water and completely stopped as a running stream, causing it to overflow and break through its banks and pond the water upon the alfalfa and corn lands of the plaintiff and hold it there for a sufficient length of time to kill and drown out the crops. In disposing of this case the court said: "In this case, assuming that the damage to the crops was caused by the manner in which the work of enlarging the canal was being done, the testimony shows that the work was being properly performed, and that the drainage commissioners had a right to have this work done. Consequently, there was no invasion or violation of any legal right of

the plaintiff, though his damage was caused by the doing of this work. This is *dammum absque injuria."*

Steele v. Pollard, supra, was a suit against the contractors. Plaintiffs sought damages done their crops because of flooding during the construction of the ditch. The effect of the holding there is that if the work is done in accordance with the law, and in a proper manner, and on the plan most economic and at least cost to the taxpayers that any damage resulting is *dammum absque injuria.* In Mitchell v. Hahn, supra, it was held that a ditch contractor was not liable for damages to crops from an overflow caused by a dam built according to contract with the skill ordinarily possessed and exercised by contractors doing the same or similar work. In Foohey Dredging Co. v. Mabin, 175 S. W. 400, supra, this instruction was asked and refused: "You are further instructed that if the dam so constructed across the Wilson canal was built under the direction and supervision of the engineer in charge of drainage district No. 12, and if you further find that said engineer was acting under the supervision and at the instance of the commissioners in charge of the said drainage district No. 12, you will find for the defendant." The refusal was held proper because in that case the dam complained of was not necessary to carry on the work. If, as in the case at bar, the dam had been necessary and had been properly constructed that the principle laid down in the instruction it seems would have been correct. Of course the contractor cannot hide behind the engineer when by his negligence crops are damaged. All the cases so hold, but where he proceeds under the direction of the engineer, and in the exercise of due care, he is not liable for the natural consequences in carrying out the order of the court for the work under his contract.

It seems that suit cannot be maintained against the district under the facts here even though negligence and resulting injury were shown as pleaded, and this it would seem is the case aside from the independent contractor feature. Arnold v. Worth County Drainage

Dictrict, 234 S. W. (Mo. App.) 349, was a suit against the district for injuries resulting from a defective bridge. The petition alleged that the district negligence failed to erect a bridge as required by the statute, and negligence built a defective bridge, and negligently permitted a defective and dangerous bridge to be constructed. The district in that case was organized under the Laws of 1913, p. 232, and known as a circuit court district as distinguished from districts for similar purpose organized in the county court. The drainage district in the case at bar was organized in the county court. But neither statute authorizes a suit against the district. In the Arnold case, supra, the court said: "It is contended that the court erred in failing to give defendant's instruction in the nature of a demurrer to the evidence. We think the contention is well taken. Drainage district incorporated under the Laws of 1913 are not private corporations but *quasi*-public corporations. They are public governmental agencies, and constitute political subdivisions of the State. [Arthaud v. Grand River Drainage Dist., —Mo. App., —, 232 S. W. 264; Morrison v. Morey, 146 Mo. 543, 560, 48 S. W. 629; Land & Stock Co. v. Miller, 170 Mo. 240, 258, 70 S. W. 721, 60 L. R. A. 190, 94 Am. St. Rep. 727; Wilson v. Drainage & Levee Dist., 237 Mo. 39, 46, 139 S. W. 136; Nauman v. Drainage Dist., 113 Mo. App. 575, 87 S. W. 1195; Squaw Creek Drainage Dist. v. Turney, 235 Mo. 80, 90, 138 S. W. 12; In re Little River Drainage Dist., 236 Mo. 94, 139 S. W. 330.] The districts act as an arm of the State in building or failing to build the bridge required by the statute, and are to be classified with counties, road districts, and school districts. While a drainage districts is organized by petition of the holders of the majority of the acreage therein (all holders of real estate need not join, but some may object), it is universally held to be an arm of the State, and is no more liable for negligence than would be the State."

The court in the Arnold case quotes approvingly from 2 Farnham on Waters and Water Rights, p. 1145:

'Municipal corporations are by statute generally made liable for their acts of negligence the same as private individuals. When the question arises, however, as to the liability of a county or drainage district, a different principle applies. Such organizations are merely subdivisions of the State, and they cannot be sued any more than the State can, unless authority to bring the suit is granted by Statute. Therefore, in determining whether or not they are liable for their negligent acts, attention must be given to the provisions of the statute. Unless a county is made liable, either by general statutory provisions or by the statute under which it attempts to carry on drainage proceedings, no suit can be brought for injury caused by it; but the action must be against the officials causing the injury."

The court points out in the Arnold case that there are two cases which apparently announce a different rule to that laid down by Farnham; that these causes are Bradbury v. Vandalia Drainage Dist., 236 Ill. 36, 86 N. E. 163, 19 L. R. A. (N. S.) 991, 15 Ann. Cas. 904, and Bruntmeyer v. Drainage Dist., 196 Mo. App. 360, 194 S. W. 778, and to these might be added Schalk v. Inter-River Drainage District, 226 S. W. (Mo. App.) 277. In the Schalk case it is said: "The other questions raised by the appellant, to-wit, that this character of corporation was of such a governmental nature that damage by it was without injury, that the plaintiff was estopped because he had made no complaint in the circuit court when damages and benefits were fixed under the statute forming the corporation, and that a constitutional right had been invaded, are disposed of in the case of Bruntmeyer v. Squaw Creek Drainage Dist., 196 Mo. App. 360, 194 S. W. 748." In the Schalk case the district was organized under the circuit court statute. [Laws 1913, p. 232.] In Bates County v. Wills et al., 269 Fed. 734, the Circuit Court of Appeals, 8th Circuit, in dealing with a Missouri drainage statute held that drainage districts are not such corporations that may sue and be sued in the absence of statutory authority so to do. [See same case, 254 U. S. —, 41 Sup. Ct. 375, 65 L. Ed. —.]

The Bruntmeyer, Schalk and Bradbury cases, however, when analyzed do not announce a different rule. Authority to sue in these cases is found in the Constitution. It must be kept in mind that these cases were for damages to land lying *outside* the District. In the Bruntmeyer and Schalk cases suit and recovery were permitted against the district, although there was no statute authorizing suit against the district. But our Constitution, article 2, section 21, provides that private property shall not be taken or *damaged* for public use without just compensation. This provision of the Constitution is self enforcing independent of any statute. [Little Tarkio Drainage District v. Richardson, 237 Mo. 49, 139 S. W. 576.] The Bruntmeyer Case was based squarely on the Constitutional provision above mentioned. The Schalk Case followed the Bruntmeyer Case. The Bradbury Case was bottomed on a similar Constitutional provision. Thus the law in this State is that one whose lands or crops outside the district have been damaged by the prosecution of the improvement may maintain a suit against the district for his damages under the constitutional provision mentioned. On the other hand if lands *in* the district or crops thereon are damaged by the *proper* prosecution of the work, recovery cannot be had against the district because such damages are awarded and adjudged in the organization of the district. If damages result to one in the district because of negligent prosecution of the work he cannot recover against the district because in such case there is no statute authorizing suit against the district. Such is the distinction as we see it between suits to recover against the district for damage to property *in* and *outside* the district.

As to the second ground of negligence alleged that the boat through negligence was permitted to sink, and that dams were constructed to raise the boat, and that by reason of these dams the flow of water was obstructed, and plaintiffs damaged, etc. It is sufficient to say that there was no showing whatever that the boat sank on account of any negligence. On the contrary it appears

that the boat sank from a cause which by the exercise of due care could not have been foreseen or anticipated. The boat sank on December 25, 1919, and the dams were constructed, the boat repaired, and the dams removed by January 6th.

Plaintiffs contend that the order of the county court ordering the work done, etc., is void, and that therefore defendants were trespassers, and liable independent of negligence. A drainage district is a municipal corporation and the legality of its organization cannot be collaterally attacked. [State ex Inf. v. Albany Drainage District, 234 S. W. (Mo.) 339, and cases there cited.]

It is our conclusion that the court should have directed a verdict for defendants. The judgment below is, therefore, reversed. *Cox, P. J.*, and *Farrington, J.*, concur.