## ROLAND et al. v. JUMPER CREEK DRAINAGE DIST. et al.

(District Court, S. D. Florida. February 14, 1925.)

No. 335.

1. **Courts �köö328(4)—Court had jurisdiction of injunction suit by numerous plaintiffs, where aggregate amount involved exceeded jurisdictional amount.**

Suit for injunction to abate nuisance and for damages by numerous plaintiffs was within federal court's jurisdiction, where aggregate amount involved was in excess of $3,000, though many individual claims were for less amounts.

2. **Drains �köö57—Bill against drainage district contractor for injunction and damages from overflow held insufficient, contractor not being liable for damages resulting from following plan of improvement.**

Bill against drainage district contractor to abate nuisance and for damages for overflowing lands, which did not set out contract, or show that contractor had not followed specifications, *held* insufficient for want of equity; contractor not being liable for damages naturally resulting from doing work according to plan.

In Equity. Bill by A. M. Roland and others against the Jumper Creek Drainage District, the Canal Construction Company, and others, removed from state court. Complainants moved to remand cause to state court, and defendant Canal Construction Company moved that bill as to it be dismissed. Motion to remand denied, and motion to dismiss granted.

H. M. Hampton, of Ocala, Fla., and A. M. Roland, of Bushnell, Fla., for complainants.

P. A. Vans Agnew, of Winter Park, Fla., and Giles J. Patterson, of Jacksonville, Fla., for defendant Canal Const. Co.

CALL, District Judge. This suit was brought in the state court in Sumter county, by some 52 persons, residents and citizens of Florida, against the Jumper Creek drainage district, a corporation of Florida, the supervisors of said drainage district, the engineer of said district, and the Canal Con-

struction Company, a corporation of the state of Illinois.

The bill alleges that each of the complainants is seized and possessed of lands in Sumter county, Fla.; that a drainage district comprising approximately 25,210 acres was duly established under the laws of the state, and bonds issued to carry out the project, pursuant to certain plans made by the engineer and adopted by the supervisors; that a contract was duly let to the Canal Construction Company to dig the canal, lateral ditches, and drains according to said plans and specifications for $450,000; that pursuant to said contract the Construction Company commenced work, beginning at the Center Hill basin, in said district; that there are two distinct elevations wherein the surface water is retained, one known as the Center Hill territory or basin, the other near Bushnell; that the Center Hill basin is some 8 or 10 feet higher than the basin near Bushnell; that a levy has been made of an assessment according to the benefits to be derived by the lands in said district, and said lands will be taxed annually for the payment of same; that in order to drain the lands it was necessary to drain the higher Center Hill basin through the lower basin near Bushnell, so that the waters thereof could be carried to Jumper creek as the outlet; that the territory to be drained around the Center Hill basin was much larger than the basin near Bushnell, and the waters therein were of much greater volume; that it was necessary that these waters should be carried in ditches and drains through the basin near Bushnell in order to reach the common outlet; that plans on which the contract was based show that the level of the Center Hill basin is much higher than the basin near Bushnell; that the contractor well knew, at the time of making the bid for the work and in making the contract, that letting the water of the Center Hill basin loose into the lower basin near Bushnell would necessarily flood the territory below; that there were a series of hills between the two basins, and there were certain drains which, in case of excessive rains, permitted the water to flow into the lower basin, but not sufficient to overflow the territory surrounding the lower basin; that the natural drainage of the lower basin at all times was sufficient to carry off the excessive rainfall and to keep the same drained for all necessary purposes; that the Construction Company dug the main canal from the Center Hill basin, through the highlands separating the two basins, to the eastern edge of the

basin near Bushnell, thereby letting the waters of the upper basin flow into the lower; that the Construction Company knew, or ought to have known, that the waters of the upper basin would overflow the lower basin, unless sufficient outlet was made from the lower basin to a common outlet; that the Construction Company negligently opened the canal and allowed the waters from the upper basin to overflow the lower basin, thereby flooding the highlands as well as the lowlands in said lower basin and adjacent to it, and such water will remain upon said lands until proper ditches are dug or it is evaporated; that the crops growing upon the lands of complainants were greatly damaged and injured, the amount of which cannot now be determined; that it is necessary that the waters from the upper basin be shut off from the lower basin to prevent a continuance of the damage, and will continue so long as it is permitted to allow the waters of the upper basin free ingress into the lower, and the same constitutes a nuisance; that no steps have been taken by the Construction Company to remedy the condition; that it was wholly unnecessary from an engineering standpoint to permit the waters of the upper basin into the lower until proper drainage had been provided in the lower basin to carry them off.

The bill then describes the individual holdings and damage claimed by each of the complainants, and then alleges that it would require a multiplicity of actions, should each complainant bring his separate action; the damage being caused by the one act. It is alleged that the contractor, being a nonresident, could remove all its property and complainants be left remediless. It is alleged that it is necessary for the court to assume jurisdiction over the construction of the drainage project, etc.

The prayers are as follows: (1) To appoint a receiver to take charge of the contractor's equipment, and immediately shut off the water from the upper basin, and cut ditches in the lower basin to carry the water thereon to the outlet. (2) To restrain the contractor from permitting any further water from the upper basin to run into the lower basin until adequate drainage can be established and maintained, to permit the waters from the upper basin to flow to the common outlet without overflowing the lower. (3) To restrain the contractor from overflowing the lands of any of the complainants. (4) To restrain the district supervisors from paying to the contractor any further moneys until all the rights of complainants have

been adjudicated. (5) For an accounting of the damage suffered and to be suffered by reason of the overflow. (6) To restrain the contractor from removing any of its property until complainants have been adequately compensated. (7) The prayer for process.

Within the time allowed by statute the Canal Construction Company filed its petition for removal of the cause to the United States District Court, on the ground of diversity of citizenship, alleging that it is a separable controversy between citizens of different states, and the matter involved in the controversy exceeds $3,000, exclusive of interest and costs.

On January 10, 1925, a motion to remand the cause to the state court was made by the complainants on the grounds, first, that this court has no jurisdiction of the cause; second, that the aggregate amount involved exceeds the jurisdictional amount is not sufficient to invoke the jurisdiction of the court; third, a large number of the claims for damage are below the jurisdictional amount; fourth, this court has no jurisdiction of the complainants whose claims for damages are less than the jurisdictional amount.

On December 18, 1924, the defendant Canal Construction Company moved to dismiss the bill as to it—the grounds being, first, there is no equity in the bill; second, it does not appear that the complainants, or either of them, are entitled to any relief against it; third, it affirmatively appears that none of the complainants are entitled to any relief as against this defendant; fourth, the bill is multifarious as to parties; fifth, multifarious as to subject-matter; sixth, it appears that this defendant is a contractor acting under contracts with a public corporation, and acts complained of were done pursuant to plans and specifications approved by said corporation and under its supervision; seventh, it does not appear that the acts complained of were negligently done; eighth, it affirmatively appears that acts complained of were not negligently done; ninth, it appears that the damages alleged are damnum absque injuria; tenth, it appears the complainants are estopped to complain of the acts; eleventh, the bill alleges negligence as a conclusion of the law, and does not plead facts showing negligence; twelfth, it does not appear that defendant failed to comply with the contract; fourteenth, it affirmatively appears that complainants are not entitled to the relief prayed; fifteenth, the granting of the

relief prayed for would be an interference with the sovereign rights of the state; sixteenth, it appears that the complainants have an adequate remedy at law.

The motion to remand and the motion to dismiss were submitted to the court upon brief.

[1] The motion to remand must first be decided, because, if that motion is granted, this court would have no jurisdiction to consider the motion to dismiss. The complainants base their motion upon the ground that the amount in controversy as to each of the complainants is not the jurisdictional amount. The bill shows that many of the complainants claim damages much less than the amount necessary to vest jurisdiction in this court, and, if the amount of damage claimed by each is the criterion by which the jurisdiction of this court is to be determined, the motion should be granted. The Supreme Court, I think, has settled this question. Mr. Justice Catron, speaking for the court in a cause where a bill in equity was filed to abate a public nuisance, says: "He seeks redress of a continuing trespass and wrong against himself, and acts in behalf of all others, who are or may be injured. * * * The character of the nuisance and the sufficiency of the damage sustained is to be judged by the courts. * * * But the want of a sufficient amount of damage having been sustained to give the federal courts jurisdiction will not defeat the remedy, as the removal of the obstruction is the matter of controversy, and the value of the object must govern." Miss. & Missouri Ry. Co. v. Ward, 2 Black (67 U. S.) 492, 17 L. Ed. 311.

Again the Supreme Court said in Market Co. v. Hoffman, as follows: "The first question to be determined is whether the amount in controversy is sufficient to give us jurisdiction of the appeal. * * * While it may be true, that if Hoffman was the sole complainant, the amount in controversy would be insufficient to justify an appeal either by him or the company, the case is one of 206 complainants suing jointly, the decree is a single one in favor of them all, and a denial of the right claimed by the company, which is of far greater value than the sum which, by the act of Congress, is the limit below which an appeal is not allowable." 101 U. S. 113 (25 L. Ed. 782).

The Circuit Court of Appeals of the Eighth Circuit has this to say upon this point, as follows: "The rule, as we understand it, is that when an injunction is asked against the erection and maintenance of a nuisance, it is not important * * * what kind of damage would result if the nuisance were operated, but rather what the cost of the alleged nuisance will be." Am. Smelting & Refining Co. v. Godfrey, 158 F. 228, 89 C. C. A. 139, 14 Ann. Cas. 8.

From these cases I deduce the rule to be that the amount of damage to the individuals is not the criterion by which the jurisdictional amount is fixed in causes seeking to enjoin a nuisance. The main purpose of the bill of complaint in this case is to abate continuing nuisance of water upon the lands of the complainants. The accounting prayed and recovery of damages by the complainants is merely incidental to the main relief sought. It is admitted in brief of complainants that the drainage district cannot be held liable for damages. Therefore the only one of the defendants who can be is the Construction Company, and certainly his interest in the controversy largely exceeds the jurisdictional amount, and it is the one who removed the cause as a separable controversy. The motion to remand must therefore be denied.

[2] In deciding the motion of the defendant contractor to dismiss the bill as to it, the court must determine from the allegations of the bill whether those allegations make such a case as makes the contractor liable to the relief prayed. The bill by its allegations shows the creation of a drainage district, the organization of same, the assessment of benefits, the issue of bonds, the making and approval of plans to carry out the drainage, the advertisement for bids, the letting of the contract to construct the canals, ditches, etc., according to the plans and specifications, the entering upon the performance of said contract, and partial performance of it according to such plans and specifications. The only charge of negligence in the construction of the work, charged in the bill, is that the canal carrying the water from the upper basin through the highlands separating the upper from the lower basin was opened by the contractor before adjacent drains were constructed through the lower basin to the outlet to carry off the waters in the canal. Was this such negligence in the performance of the contract as makes the contractor liable? A copy of the contract is not made an exhibit to the bill, and the court cannot say whether that contract designated where the contractor should begin work, nor do the specifications, a copy of which is attached, throw any light upon this point. Nor is there any allegations in the bill which would support

the contention that the contract provided for the construction of drains through the lower basin to carry off the waters before admitting the waters from the upper basin.

Upon the principle decided in the case of Fitzgibbon v. Western Dredging Co., 141 Iowa, 328, 117 N. W. 878, the contractor would not be liable for the damage resulting from an overflow of the lands of complainants caused by the construction of the canals and ditches pursuant to the plans and specifications under the supervision of the engineer of the Drainage District. I quote from that case as follows:

"The central thought of this instruction, that in performing the contract it was defendant's duty to use reasonable care in the manner and method of its performance to avoid injury to the adjacent lands, is undoubtedly correct. It is equally true that, the ditch being constructed by the state acting through its local agencies in the exercise of its power of eminent domain, the contractor and laborers who do the work of actual excavation are not liable for damages which naturally result to said lands from carrying the scheme or plan of drainage into execution. In other words, if the contractor or laborer makes the ditch substantially in accordance with the plan furnished him, taking reasonable care to avoid doing or causing unnecessary injury to adjacent lands, he is not charged with responsibility for injurious effects which naturally follow the authorized improvement. In the absence of any provision to the contrary in the contract, it will also be conceded that the contractor may employ means and methods of excavation which are usual and approved generally among persons performing that kind of service. As is well known, drainage ditches of any considerable portions in this state are quite generally constructed by the use of steam dredges mounted on a boat or raft working from the highest elevation on the route down grade in the direction of the outlet, the boat or raft floating upon the water which accumulates in the ditch as the work advances. Naturally, the further the work progresses, the larger the body of water which may be expected to accumulate behind the dredge, and, where many ponds or swampy places are tapped, it is inevitable that some of the water so collected will fill or overflow the banks of the ditch before the pressure is relieved by the completion of the excavation to some outlet. For damages caused by such overflow, the contractor under the rule already stated is not to be held liable without it being shown that such overflow was caused or augmented by some negligent act or omission on his part. There is no contract relation, express or implied, between him and the landowner, and the measure of his duty in the premises is found in the general rule which binds each person to so use and enjoy his own rights and privileges as to avoid injury to his neighbor." 141 Iowa, 328, 117 N. W. 878.

The motion to dismiss will be granted.