Margaret WOOD, d/b/a Bay View Resort
and Subdivision, Appellant,

v.

SOUTH RIVER DRAINAGE DISTRICT, a
Public Corporation, et al., Respondents.

No. 52720.

Supreme Court of Missouri,
Division No. 1.

Dec. 11, 1967.

J. Andy Zenge, Jr., Dennis W. Smith, Canton, for appellant.

Myrl B. Sternke, Palmyra, for respondent.

HOUSER, Commissioner.

This is an appeal from an order sustaining defendants' motion for a summary judgment on the pleadings on the basis that as a matter of law plaintiff "has stated no cause of action." Plaintiff, a landowner, brought an action for damages against South River Drainage District, a public corporation, and the members of its board of supervisors, in two counts. Count I follows:

"Comes now the Plaintiff, Margaret Wood, and for Count I of her first amended petition states:

"1. That the Plaintiff is a resident of Marion County, Missouri and is the sole owner of land in Marion County, Missouri, operated under the business name of Bay-view Resort and Subdivision.

"2. That the South River Drainage District is a public corporation created, organized and existing under and by virtue of an act of the legislature of the State of Missouri relating to the organization of drainage districts by Circuit Courts.

"3. That said Drainage District was incorporated by Decree of the Circuit Court of Marion County, Missouri and entered of

**34**

record in the office of the Recorder of Deeds in Marion County, Missouri.

"4. That the Board of Supervisors of the South River Drainage District are the governing Board of the Drainage District and are joined as parties to this petition in their representative capacity only and not as individuals.

"5. That the South River Drainage District was organized to construct a levee fourteen miles in length, said levee to separate the Mississippi River from the Bay de Charles and that the Bay de Charles and the Bay de Charles Basin are both in Marion County, Missouri; that on February 12, 1918, the South River Drainage District was given the additional authority by the Circuit Court of Marion County, Missouri, to purchase and install a pump and to construct a pumping station to use to pump drainage and seepage water from the land behind the levee, to increase the land available for agricultural purposes, said land lying in the Bay de Charles, Basin, with said additional authority including the construction of ditches, bridges, private roads, tile lines and repairs of said facilities.

"6. That the Bayview Subdivision has been platted as a subdivision by James H. Fleming, Registered Land Surveyor and certified on the 6th day of October, 1960, to enable Plaintiff to sell plated (sic) lots in said subdivision.

"7. That the lots of the Bayview Subdivision lay within the South River Drainage District and adjacent to the Bay de Charles which is a natural body of water lying within the South River Drainage District and separated from the Mississippi River by a levee constructed and maintained by the South River Drainage District.

"8. That the Decree of the Marion County Circuit Court authorized Defendants to use the pumping station of the Drainage District to drain the Bay de Charles so as to facilitate the drainage of seepage and drainage water which collected in the Basin and behind the levee separating the Bay de Charles from the Mississippi River to make additional land available for agricultural purposes.

"9. That the Defendants have pumped water from the Bay de Charles much in excess of the normal and reasonable needs of the Drainage District, and in excess of the authorization granted to said district by the Circuit Court of Marion County, Missouri in its Decree creating the district and pumping operations.

"10. That by virtue of the excessive and unreasonable pumping of the Bay de Charles by the Defendants the Bay de Charles is no longer suitable or usable as a pleasure or fishing area due to the face that the level of the water in the Bay is so diminished by the excessive and unreasonable pumping of the Defendants as to make the Bay a low, swampy and muddy pool of water.

"11. That the severe, unreasonable, excessive and damaging pumping operations of the Defendants began and have occurred from and after the time that damages were awarded by Commissioners, and that the damages awarded did not, or could not have anticipated damages suffered by Plaintiff from and after the beginning of the excessive and unreasonable pumping by the Defendants.

"12. That by virtue of the Defendants excessive pumping of the Bay de Charles, the Defendants have taken the land and property of the Plaintiff by the severe and permanent diminution in value of the same and have done so without just compensation to the Plaintiff for the loss of the value of her land.

"13. That the Plaintiff has suffered a direct, permanent, and continuous pecuniary loss by the excessive pumping of the Defendants in the diminution of the value of her land without just compensation therefor.

"WHEREFORE, Plaintiff prays judgment against the Defendants in the amount

of Thirty-two Thousand Five Hundred Dollars ($32,500) and for such other and further relief as the Court shall deem just and proper in the premises, and for her costs expended for Count I of this petition."

In Count II plaintiff made many of the same allegations, tailored to recover $14,000 "for the permanent loss of her fishing and pleasure resort business."

The drainage district moved for summary judgment for the reason that the facts stated in their affidavit "establish as a matter of law that Plaintiff has stated no cause of action against this Defendant." The affidavit recited that the drainage district was originally organized by the County Court of Marion County at its August Term, 1903; that the land in which Bay View Subdivision lies was viewed by commissioners appointed by the court, who made a report of benefits and damages on the basis of which the court issued an order assessing benefits against the land; that plaintiff's predecessors in title made no objection to the report and did not appeal therefrom; that the district was reorganized by circuit court decree in 1917; that the lands now owned by plaintiff were continued as a part of the district and that plaintiff's predecessors in title made no objection thereto; that by county court order in 1909 and a circuit court decree in 1918 the district was given additional authority to purchase and erect a pumping plant at its present site and authority to remove accumulated waters from within the district by pumping from the Bay de Charles; that commissioners were appointed to assess benefits and damages accruing to all the lands in the district and to appraise the lands to be used for holding basins and drainage works; that the commissioners' report was filed in and incorporated in a decree of the circuit court, to which no objections were made or filed by plaintiff's predecessors in title. Attached to the affidavit were two decrees of the circuit court, dated May 16, 1917 and February 12, 1918, by which the following was made to appear: The reclamation work for which the district was originally organized contemplated the construction of a 14-mile levee, and the filling in of the Bay de Charles where the water from the Mississippi River flows into the bay, in order to prevent overflow from the river; and contemplated that Bay de Charles with its tributaries were to be taken over by the district to provide an internal drainage system which it was thought would be "almost sufficient to protect said lands from all surface and seepage waters upon said lands in the district." It was further contemplated that proper openings be left in the levee at a point where it crosses the Bay de Charles· and at various other places for the outlet of all accumulated surface waters. The plan of reclamation was amended in 1909 by providing for the construction of a revetment along the inner side of the levee and by the purchase and installation of a pumping plant with necessary engines and equipment with which to remove accumulated waters from within the district. By 1918 all of the works contemplated by the original and amended plans had been constructed, fully paid for and were in existence. In 1918 it was found that the full and complete reclamation, drainage and protection from overflow or damage by water of the lands in the district presented three problems: protection from overflow from the Mississippi and South Rivers; internal drainage; and removal of the surface and seepage waters when collected into the storage basin. The first problem was well taken care of by the levees theretofore constructed. A different situation existed in 1918 with respect to the problem of internal drainage. Although at the time of the construction of the levee it was thought that Bay de Charles with its tributaries would be "almost sufficient" to take care of the internal drainage, fifteen years of experience demonstrated that additional means had to be provided to enable surface and seepage waters to pass off the lands so that the lands could be cultivated, completely reclaimed and protected. In order to more effectively and economically remove the waters when collected into the storage basin certain other additional works, in-

stallations, structures and machinery were necessary. It was further necessary, in order to accomplish the full and complete reclamation of the lands in the district, to construct certain other ditches, bridges and tile lines, and to repair the levees and make additions to the pumping station. The further amendments and changes to the plan of reclamation described in the court order were authorized in 1918, and commissioners were again appointed to appraise the lands within and without the district to be acquired and used for rights of way, holding basins and other drainage works, and to assess benefits and damages to the lands in the district by reason of the amended plan of reclamation.

The amended plan was implemented, and the pumping plant was operated for years. During this time plaintiff established and engaged in the successful operation of a resort property and subdivision adjacent to the water of the Bay de Charles. As stated in her brief, "With the past several years the level of water in the Bay de Charles has declined as the result of accelerated pumping from the Bay, and appellant consequently" commenced this action.

No counteraffidavits were filed by plaintiff.

Claiming that there are genuine issues as to material facts, plaintiff-appellant makes the point that the court erred in granting the motion for summary judgment, and proposes that as a matter of law appellant has a legally protected right, based on disputed facts, which entitles her to a trial of her suit on the merits. The basis of her proposition is that she has a legally protected interest in retaining the water of the Bay de Charles at the level which has made her property adjacent to the bay valuable as a pleasure and fishing area. In effect conceding that as owner of lands lying within the drainage district she could not recover damages occasioned by the proper prosecution of the work because "such damages are awarded and adjudged in the organization of the district," Greenwell v. A. V. Wills & Sons, 210 Mo.App. 651, 239 S.W. 578, 583, appellant asserts that she has been damaged by an *improper* prosecution of the work; that the pumping activities were excessive and that excessive pumping was not within the authorization of the plan of reclamation; that such extra-reclamation activities have taken a property right from her and damaged her property. Appellant denies that she is seeking recovery on any theory of negligence (which she concedes is not available to her because of the doctrine of governmental immunity from tort liability). She goes on the theory of inverse condemnation; that she has a property right which has been taken or damaged for public use without just compensation; that eminent domain proceedings should have been, but were not, brought; and that under the doctrine of United States v. Lee, 106 U.S. 196, 1 S.Ct. 240, 27 L.Ed. 171, and Beetschen v. Shell Pipe Line Corp., Mo.App., 248 S.W. 2d 66, 70, she is entitled to recover her loss in this damage suit.

We find no issue of material fact in the question whether there has been excessive pumping or whether appellant's damages are in excess of the damages contemplated by the commissioners at the time of the assessment of damages, as appellant claims.

In the first place, the pleadings are insufficient to raise any such material questions of fact. The allegations in the petition that the pumping of water from the bay was excessive and unreasonable, in excess of the normal and reasonable needs of the drainage district, and in excess of the authorization granted the district by the circuit court decree, are mere conclusions and not statements of fact. That her damages were not contemplated in the condemnation proceedings is self-evident, since the resort and subdivision business was not then in existence.

More decisively, the affidavit and exhibits filed by defendants, which have not been controverted by appellant, conclusively show that the supervisors acted within

their powers in conducting the pumping operation as they did.

■ Under the powers granted to the drainage district at the time of the original organization in 1903 the district took over the Bay de Charles and its tributaries for the purpose of providing internal drainage system for the lands in the district. The bay was filled in and *provision was made for the outlet of all accumulated surface waters.* The drainage district was reorganized by circuit court decree dated February 12, 1918 under the provisions of Laws of Missouri 1913, pp. 232–267, enacted for the purpose of reclaiming and protecting swamp, wet or overflowed lands from the effect of water "for sanitary or agricultural purposes, or when the same may be conducive to the public health, convenience or welfare, or of public utility or benefit." The circuit court then found that additional means of removing the seepage and surface waters that accumulated in the storage basin (the Bay de Charles) were necessary. Provision was made for a pumping station, additional ditches, and other works, all of which were designed to accomplish this objective. The statutory basis for the exercise of the power to remove the waters from the Bay de Charles is found in Laws of Missouri 1913, p. 232, § 26, p. 249, authorizing and empowering the board of supervisors to change the course and flow of any watercourse or bayou in the district; to concentrate, divert or divide the flow of water in or out of the district; to construct and maintain holding basins, pumping stations and syphons and any other improvements necessary to preserve and maintain the works, and to hold and control any reservoir or holding basin for draining, protecting and reclaiming the lands in the district. Neither that section nor any other section of the law regulating drainage districts organized by circuit courts nor any provision of the circuit court decree circumscribed, limited or restricted the right of the supervisors to pump and exhaust water from Bay de Charles. Drainage districts are governmental agencies exercising governmental functions. They operate under the police powers of the state. See cases collected in Missouri Digest, Drains, ☞13. "Drains are established to take off water." Grand River Drainage Dist. of Cass and Bates Counties v. Reid, 341 Mo. 1246, 111 S.W.2d 151, 152. In the performance of their duties the supervisors were empowered, in the free exercise of their discretion, to maintain the level of the water within the bay at any height deemed advisable by them. No right to have the water maintained at any particular level vested in appellant by reason of the fact that she established a profitable resort business adjacent to the bay, at a time when the bay was and previously had been part and parcel of the drainage system and under the control of the supervisors. The restriction appellant seeks to impose upon the free exercise by the supervisors of the powers entrusted to them for the public good conceivably might impair and interfere with the effective reclamation of the lands in the district. Appellant's private interests must yield to the public interest. Under the uncontroverted facts no issue of "excessive" or "unreasonable" pumping arose or could arise.

In the operation of the bay as a holding basin the district "did not encroach upon the lands or property of the appellant, and there was no actual and physical taking or damaging of plaintiff's property, or enforced occupation thereof or interference therewith, or the exercise of any proprietary functions in relation thereto. * * * Acts of a governmental agency in the proper exercise of the police power of the state which do not directly encroach upon private property or private rights, though their consequence may impair the use or enjoyment thereof, are held not to be a taking or damaging within the meaning of constitutional provisions relating to eminent domain and do not entitle the owner of such property to compensation from the state or its agent for such incidental or consequential damage." Max v. Barnard-Bolckow Drainage Dist., 326 Mo. 723, 32 S.W.2d 583, 586. In

that case plaintiff sought damages from a drainage district for interfering with the flow of a river which operated plaintiff's gristmill. Some eighty years previously plaintiff's predecessor in title on application to the circuit court under the Mills and Mill-Dams Act, RSMo 1845, Chapter 121, had been granted a permit to erect a dam across the river, to be connected with a saw and gristmill. Plaintiff's position was that the state "could not, by its own subsequent acts, reduce the natural flow and depth of the water in the stream so as to impair the water power used to operate his mill without compensation by the state to him therefor." It was held that the plaintiff's rights were subject to the superior and paramount right of the state to use the stream for the public purpose of draining wet and overflowed lands; that no legal right had been infringed or invaded; that the damages were indirect, incidental and consequential, and did not come within the constitutional provision that private property shall not be taken or damaged for public use without just compensation. The same considerations are applicable in the instant case.

■ The damage to the property of appellant and her loss of business revenue consequent upon the drainage of the bay is one of the incidents of the ownership of property, comparable to loss of trade or business, or of commercial value, as a result of diversion of traffic resulting from an improvement or relocation of streets or highways. Such a loss is the result of an exercise of the police power, is damnum absque injuria, and is not compensable. State ex rel. State Highway Commission v. Meier, Mo.Sup., 388 S.W.2d 855 [4]; State ex rel. State Highway Commission v. Brockfeld, Mo.Sup., 388 S.W.2d 862, 865; Filger v. State Highway Commission, Mo.App., 355 S.W.2d 425; 29A C.J.S. Eminent Domain § 162, p. 702.

In support of her position appellant cites Bohannon v. Camden Bend Drainage Dist., 240 Mo.App. 492, 208 S.W.2d 794, reversing a judgment of dismissal of a petition by resort owners against a drainage district. This was an action to enjoin the construction of a ditch under a plan of reclamation. The proposed ditch would open into a lake on which the resort owners had built cabins, docks and other facilities and lower the lake below its normal and natural level, thus rendering plaintiffs' lands useless and of little value, converting the lake from a thing of utility to a low, swampy, wet piece of land. The court indicated that injunction was not the proper remedy but remanded, apparently to give plaintiffs an opportunity to sue for the "taking of plaintiffs' proprietary interest in the lake or the waters thereof, which taking is prohibited by the constitution until compensation is made therefor." Bohannon is distinguishable on the facts. Plaintiffs, riparian owners on the lake, had built their cabins, docks and facilities and established their businesses prior to the time the drainage district adopted and commenced to implement its plan of reclamation. As riparian owners they had a common-law right to the continuance of the lake in its natural state. The district invaded a vested right held and enjoyed by the property owners. Not so here. The bay was a natural body of water prior to the construction of the levee by the district, but appellant's resort business was not established while the bay was in that natural state. At the time appellant invested her money in her resort business the plan of reclamation had been implemented, the bay filled in, the gravity flow of water from the Mississippi River had been dammed, and the bay for years had been incorporated into and appropriated for use as an integral part of the drainage system. Appellant acquired no vested right in a natural body of water by establishing her business adjacent to the lake *after* the bay had been thus changed and appropriated. She had no common-law right to the continuance of the bay in its new, artificial state, and had no legally protected interest in the maintenance of the water at any particular level. There is no real or genuine

issue as to any material fact. As a matter of law appellant cannot recover.

The circuit court correctly ruled the motion for summary judgment and the judgment is affirmed.

WELBORN and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.