CHARLES J. BRUNTMEYER, Respondent, v. SQUAW CREEK DRAINAGE DISTRICT NO. 1, Appellant.

Kansas City Court of Appeals, April 30, 1917.

DAMAGES: Drainage District: Governmental Agencies: Liability. Although drainage districts are governmental agencies to the extent at least that they have all the elements of corporations formed to accomplish a public use and purpose, yet they are not exactly like a county or a township, nor are they purely governmental agencies such as school districts. And where in the creation of a drainage district and its system of drainage, waters are collected and thrown in a body upon land adjacent to but outside of said district and no right to subject it to such overflow has ever been acquired in any way nor opportunity afforded for assessment of damages arising from the creation of said district, the district is liable for such damages. Otherwise such adjacent property is taken and destroyed without compensation in order that the district's public enterprise may be set on foot.

Appeal from Holt Circuit Court.—*Hon. Wm. C. Ellison,* Judge.

AFFIRMED.

*T. C. Dungan* and *Robert L. Minton* for appellant.

*H. T. Alkire* and *S. F. O'Fallon* for respondent.

TRIMBLE, J.—The defendant is a Drainage District, organized in the year 1906, pursuant to sections 8251 *et seq.* of article 3, chapter 122, Revised Statutes 1899, as reenacted by the statute of April 8, 1905, Laws 1905, page 190. (With certain subsequent amendments made thereto, said laws now appear in the Revision of 1909 as section 5496 *et seq.*) Plaintiff, as the owner of a farm outside of said district, brought this suit in March, 1907, to recover damages for loss of his crop caused by an overflow of water thereon brought about by the system of dikes, ditches and drains constructed by said district for the drainage of the lands embraced therein. A verdict of $150 in plaintiff's favor was returned and defendant appealed to this court, where the case was submitted at the March term, 1911. Subsequently it was ordered transferred to the Supreme Court on the theory that a determination of the issues necessarily involved the construction of section 21 of article 2 of the Constitution which forbids the taking or damaging of private property for public use without just compensation. It seems, however, that a decision of the case does not involve the *construction,* but merely the *application,* of the Constitution. At any rate the Supreme Court on the 11th of December, 1916, retransferred the case, and it is now before us for disposition.

Some claim seems to be made by appellant that the evidence was insufficient to sustain the verdict, but even a casual examination of the record discloses substantial evidence to support the claim that the digging of the ditches and the creation of the dikes alongside, which the defendant caused to be constructed, in the creation of its system and plan of drainage of the lands within its boundaries, caused the waters complained of to be gathered up and thrown in a volume upon plaintiff's land to the injury and destruction of the crop growing thereon. There being substantial evidence to support the finding made by the jury and approved by the trial court, we cannot disturb the verdict on the theory that the evidence does not support

it. [American Brewing Co. v. City of St. Louis, 209 Mo. 600; Bray v. Kremp, 113 Mo. 552; State v. Richardson, 117 Mo. 586.]

Error is claimed in the exclusion of evidence in the examination of one witness. Defendant was examining him concerning the water and the conditions on plaintiff's land, in the course of which the witness remarked he was attempting to go to Forest City at the time he saw the conditions he testified to. The court's action in excluding this was construed by counsel for defendant as excluding certain evidence he was intending in his own mind to bring out which would show that the water did not come from the source claimed by plaintiff. That counsel and court did not understand each other is clear, because the court in its rulings expressly said it would admit evidence showing where the water came from. Counsel did not state what the conditions were that he wanted to show on adjoining lands or that they were offered as tending to show where the water came from. It is clear that the court was not excluding any evidence which would tend to show the source of the water. This is shown not only by the rulings made by the court at the time, but also by the fact that everywhere else and throughout the trial defendant was allowed full opportunity to develop all the testimony that it now claims it was here prevented from showing.

The sole instruction asked by defendant (aside from the one in the nature of a demurrer to the evidence), was properly refused. The effect of the instruction was to tell the jury that even though the acts of the defendant *contributed* to plaintiff's injury yet unless they were the *sole* cause thereof plaintiff could not recover. This is not the law. The matter attempted to be covered by the instruction, had it been properly drawn, was fully covered by instructions given by the court on its own motion. So that even if the instruction had been faultless its refusal would not have been error. [Reno v. City of St. Joseph, 169 Mo. 642, 659; Bently v. Clarkson, 110 Mo. App. 1, 6.]

Defendant's main contention is that even though the construction of its drainage system did result in injury and damage to plaintiff's land outside of and adjoining the district, still there is no liability on the part of the drainage district because it is a governmental agency, an arm of the State, and as such cannot be sued for the damage so caused by the creation of its drainage system.

In order to understand the precise question here presented, the exact nature of plaintiff's cause of action must be kept clearly in mind. This is not a suit for the unauthorized or negligent acts of the officers or agents of the district. But it is a suit wherein plaintiff alleges that in the creation of its drainage enterprise, defendant constructed its system of drains, dikes and ditches, and cut and intersected creeks and water courses, thereby turning and diverting the waters therein from their natural water course and from the natural drainage thereof, and, after collecting said waters, conducted them by means of said drains and ditches to a point or points near to plaintiff's land, which land was outside of said district, and there deposited them upon, or caused them to overflow, plaintiff's land to his injury and damage. In other words, the establishment of the district and its drainage system resulted in collecting the waters of creeks and other water courses, and also surface water, and casting them in a volume upon plaintiff's land which theretofore enjoyed its own natural drainage and was free from overflow. And plaintiff's land was outside of the district and no right to so subject it to such overflow had ever been acquired in any way, nor had opportunity ever been afforded for an assessment of damages to said land arising from the creation of said district. It would seem that if the drainage district is exempt from liability under such circumstances, then plaintiff's property has been taken and destroyed without compensation in order that the district's public enterprise may be set on foot. But this the above-mentioned section of the Constitution expressly forbids.

It is true, the Supreme Court in Mound City etc., Co. v. Miller, 170 Mo. 240, in answering the contention that the law authorizing such drainage districts was unconstitutional, held that they were not mere private corporations but were public governmental agencies; that is, that they "have all the elements of corporations formed to accomplish a public use and purpose," and that the statute authorizing their creation was "not a law passed to accomplish exclusive and selfish private gain" and hence it did not come within the constitutional inhibitions invoked against it. And so it is also held in Squaw Creek Drainage District v. Turney, 235 Mo. 80, 90; In re Little River Drainage District, 236 Mo. 94; Morrison v. Morey, 146 Mo. 540. But these cases do not hold that if such a corporation is formed it may, in the creation of its system of drainage, destroy private property adjacent thereto without compensating the owners or rendering itself liable therefor. While a drainage district has the elements of a public corporation sufficient to meet the constitutional requirements with reference to the powers sought to be exercised, yet it is not exactly like a political subdivision of the State, as a county or township. Nor is it *purely* a governmental agency, such as a school district. A drainage district is organized by the landowners for the purpose of improving and reclaiming their lands, and this is the primary purpose though the incidental public good attained is sufficient to enable it to come within the limits set by the Constitution. Such districts are given the power of eminent domain and may condemn lands necessarily taken or damaged by the construction of its drainage system, but it is required to pay for all damages thus inflicted. The fact that the statute creating such district does not expressly say they may be sued does not prevent a suit *of the nature here involved,* for the Constitution will not allow them to take or damage private property without paying therefor.

It has been held in a number of cases in other States that such districts, being public corporations and

governmental agencies, were not liable for the negligent or tortious acts of its officers. And in some of the earlier cases the doctrine was announced that the district was not liable for *any* damage done even though the mere creation of the drainage plan damaged private property. Among these appears the case of Elmore v. Drainage Commissioners, 135 Ill. 269. But in that case, although the court seems to go to the length above indicated, the plaintiff's land was *inside* the district, and he, therefore, not only had had an opportunity of having his damages assessed but it was presumed that he was fully compensated for all damages consequent upon the construction of the drainage system.

In the later case of Bradbury v. Vandalia Drainage District, 236 Ill. 36, 45, the same court held that it was quite evident that the doctrine of the Elmore case needed some revision or limitation. The nature of the case at bar is precisely like the one in the Bradbury case as will be seen by noting the language of the court on page 43 where it is said:

"It is first to be observed that in this case it is not necessary to the maintenance of the action that the corporation or its officers should have been guilty of either wrong or negligence. The first and third counts aver that the scheme of the improvement as fixed by the decree of the county court included the construction of the levee, which was erected in accordance with said decree. Under those counts the damage resulted, not from negligence or improper construction, but from the adoption of the plan of drainage to benefit the lands within the district; and in Stout v. McAdams, supra, which was an action on the case, it was held that although the act of one person may be in itself lawful, yet if in its consequences it necessarily damages the property of another, the party occasioning the damage is liable to make reparation commensurate to the injury he has caused."

Continuing afterwards upon the question of whether a drainage district should be held liable for damage thus created, the court says on page 44:

"Lands taken or damaged by a drainage district for its purposes are taken or damaged for a public use, and compensation must be made therefor. [Wabash Railroad Co. v. Coon Run Drainage and Levee District, 194 Ill. 310;. Juvinall v. Jamesburg Drainage District 204 Id. 106.] If a drainage district actually takes land, compensation must be made before the land is appropriated, and if the district concedes that damage will result to lands such damages may be assessed under the law of eminent domain; but if the district does not concede, in the first instance, that damage will result, an action on the case is an appropriate remedy to determine the question whether lands will be damaged and to recover the damages. Under the Constitution private property cannot be taken or damaged for a public use without just compensation, and this gives a right of action."

The court calls attention to the fact that drainage districts do not occupy exactly the same place as other corporations which are purely political or civil divisions of the State. The State is not divided into drainage districts nor do they have public or governmental duties thrust upon them without their consent. A district is organized by the landowners in the district and the lands are assessed to pay the whole costs on the theory that they alone are benefited. And then the court goes on to say:

"Undoubtedly a drainage district is not liable for the unauthorized acts of its commissioners for which they are personally liable, but the district is clothed with the power of eminent domain for the purposes of its organization and is prohibited by the Constitution from taking or damaging lands without making compensation therefor. If no means were furnished with which to pay such damages that fact would furnish no authority for causing such damage, and the obvious re-

sult would be that acts causing damage to others could not be performed at all.''

We think this applies to the case at bar. The plaintiff's land is not inside the district and it was formed without affording him an opportunity to have his damages assessed and compensation given for the damages accruing to him, not through some negligent or unauthorized act of an agent of the district, but through the very creation and establishment of the district itself. If the district can do this and collect its surface water into one volume and divert natural water courses so that the lands in the district are drained at the expense of plaintiff, then his property has been taken and damaged to benefit the lands in the district, and that without compensation in any way.

We are unwilling to lend our sanction to the doctrine that the district is immune under such circumstances. The judgment is, therefore, affirmed. All concur.