JOHN H. TANT, Respondent, v. LITTLE RIVER DRAINAGE DISTRICT and OTTO KOTCH-TITZKY, Appellants.

Springfield Court of Appeals, March 11, 1922.

1. **DRAINS: Drainage District not Liable for Negligence in Prosecution of Work.** A drainage district is not amenable to a landowner whose land is inside the district for damages caused by negligence in the prosecution of the work of constructing ditches.

2. ———: **Landowner, Seeking Damages from Contractor, Must Show that Flooding of Land in Course of Construction of Ditches was Negligent.** Contractor of drainage system was not liable to an owner of land within the district, which had been rendered fit for cultivation and had been turned back to its original condition by the building of dams to float barges used in the course of the work, without a showing that such dams were not necessary, or proper, and that the consequent flooding the land was caused by a negligent disregard of landowner's rights; the doctrine of *res ipsa loquitur* not applying.

3 ———: **Landowner Cannot Object to Steps Resulting in Delay Taken by a Contractor and District in Construction of System.** Where contract for construction of drainage ditches fixed the time of its performance and provided for payment of damages to the district for each day of delay in its performance and under what circumstances an extension of time could be secured, a landowner within the district had not right to object to steps taken by the contractor and the district, under such provisions, resulting in delay, in the absence of collusion between the district and the contractor.

Appeal From Pemiscot County Circuit Court.—*Hon. Sterling H. McCarty*, Judge.

REVERSED.

*Oliver & Oliver* and *Shepard & Oliver* for appellants.

(1) The status and position held by such districts in our scheme of government, has been clearly defined

by our appellate courts. They have frequently been defined as a political subdivision of the State—as municipal corporations—as governmental agencies based upon an exercise of the police power. Some of the definitions may be found in the following cases: Land & Stock Co. v. Miller, 170 Mo. 240, l. c. 251; Drainage District v. Turney, 235 Mo. 80, l. c. 90; State ex rel. v. Taylor, 224 Mo. 393, l. c. 469; Morrison v. Marley, 146 Mo. 543, l. c. 561; Barnes v. Construction Co., 258 Mo. 175, l. c. 175-6; Wilson v. Drainage District, 257 Mo. 266, l. c. 286; State ex rel. v. District, 269 Mo. 444, l. c. 548; Houck v. Drainage District, 239 U. S. 261-2; L. R. D. D. v. Railroad, 236 Mo. 94, l. c. 111; State ex rel. McAllister v. Albany Drainage District, decided by Supreme Court of Mo. Oct. 7, 1921. (2) If the defendant is to be treated as a municipal corporation—a governmental agency —created by an exercise of the police power of the State, the drainage district is not liable for the acts of Kotchtitzky or any one else irrespective of whether he is an independent contractor or a servant, when the acts complained of are necessary in carrying out the public functions for which the district was organized as a governmental agency. Murtaugh v. St. Louis, 44 Mo. 479; McKenna v. City of St. Louis, 6 Mo. App. 320; Behrmann v. City of St. Louis, 273 Mo. 578; Trower v. City of Louisiana, 198 Mo. App. 532; Ulrick v. City of St. Louis, 112 Mo. 138; Cassidy v. St. Joseph, 247 Mo. 197; Healy v. Kansas City, 277 Mo. 619; 28 Cyc. 1257-58; Ford v. School District, 121 Pa. 543, 1 L. R. A. (Pa.) 607; Irvine v. Mayor, etc., of Chattanooga, 47 S. W. 419; Bates v. Houston, 37 S. W. 383; Bartlett v. Clarksburg, 43 L. R. A. 295, 45 W. Va. 393; Simpson v. Whateom, 33 Wash. 392, 63 L. R. A. 815. (3) ''Municipal corporations are considered in two aspects. One where their functions relate to the corporate interests only, and the other where they discharge certain governmental functions. The authority for the latter is characterized as '*quasi*-delegated sovereignty for the preservation of the public peace and safety and the prevention of crime.' In per-

forming the duties relating solely to its corporate character, the city is liable for injuries caused by negligence of its agents; in performing duties relative to the latter or governmental character for the public good, it is not liable. McKenna v. City of St. Louis, 6 Mo. App. 320; Murtaugh v. City of St. Louis, 44 Mo. App. 479. These two early cases have been followed and quoted by many late cases.'' (4) ''The rule of law is well settled in this State that a municipal corporation is not answerable in damages for the negligent acts of its officers in the execution of such powers as are conferred on the corporation or its officers for the public good.'' Murtaugh v. City, 44 Mo. 479; Hannon v. St. Louis Co., 62 Mo. 313; Armstrong v. City, 79 Mo. 319; Kiley v. City, 87 Mo. 103; Carrington v. City, 89 Mo. 208; Keating v. City, 84 Mo. 115; 2 Dillon on Municipal Corporations (4 Ed.), sec 965a. (5)    The same author says: ''The police regulations of a city are not made and enforced in the interest of the city in its corporate capacity, but in the interest of the public.  A city is not liable, therefore, for the acts of its officers in attempting to enforce such regulations.'' Caldwell v. Boone, 51 Iowa, 687; Odell v. Cshcroeder, 58 L. 353; Ogg v. Lansing, 35 Iowa, 495; Prather v. Lexington, 13 B. Mon, 559; Elliot v. Philadelphia, 75 Pa. St. 347; McKay v. Buffalo, ———, on Municipal Corporations (4 Ed.), sec. 975, p. 1197, note 1;' Ulrich v. City of St. Louis, 112 Mo. 143-144.

*Ward & Reeves* for respondent.

(1)    The drainage district in this case takes the broad ground that the drainage district cannot in any case be held liable for a tort.  But this is not the law, as heretofore declared by the appellate courts of this State. Bungenstock v. Nishnabotna Drainage District, 163 Mo. 198; Schalk v. Drainage Dist., 226 S. W. (Mo. App.) 277; Bruntmeyer v. D. D. No. 1, 196 Mo. App. 360.  (2) The defendant Kotchtitzky was not an independent contractor.  ''An independent contractor is one who, carry-

ing on an independent business, contracts to do a piece of work according to his own methods and without being subject to the control of his employer as to the means by which the result is to be accomplished, but only as to a result of the work." 26 Cyc., 1546; 26 Cyc., 970; 16 Am. & Eng. Ency. of L. (2 Ed.) 186; Gayle v. Co., 177 Mo. 427; Crenshaw v. Ullman, 113 Mo. 639; Flori v. Dalph, 192 S. W. (Mo. Sup.) 949; McGrath v. St. Louis, 215 Mo. 210. (3) The test of the relationship (whether an independent contractor or a servant) is the right to control; it is not the fact of actual interference with the control, but the *right* to interfere that makes the difference between an independent contractor and an agent. 26 Cyc. 1547. If the employee is subject to control of the employer as to the means he is not an independent contractor, but a servant. 26 Cyc. 1548; O'Neil v. Blase, 94 Mo. App. 648; Mfg. Co. v. Wrong, 132 U. S. 523. (4) And it is not a good defense in this case that the defendant did the work according to the contract and the plans and specifications, and under the supervision and direction of the officers of the district. Stanton-White Dredging Co. v. Braden, 208 S. W. 598; Wood v. Drainage Dist. No. 2, 161 S. W. 1057; Foohey Dredging Co. v. Mabin, 175 S. W. 400. (5) But it is asserted on behalf of appellants that since the respondent's land was within the drainage district that therefore the damages which he suffered were necessarily taken into account in the report of the viewers when they assessed the damages and benefits for this construction work. This is not the law in a case like this, where negligence of the contractor in the construction of the work is relied upon as grounds of recovery. Woods v. D. D. No. 2, 161 S. W. 1057; Dredging Co. v. Mabin, 175 S. W. 400. (6) Appellants urge that the plaintiff's damages were caused by unprecedented rainfall, for which the defendants would not be liable; but the law is that if the negligence of defendants directly contributed to the plaintiff's damages, or the defendant's negligent acts concurred with an act of God to produce

the damages, then the defendants would be liable.   Galveston, etc., v. Riggs, 107 S. W. 589; Bailey v. Railway Co., 207 S. W. 82; Benton v. St: Louis, 248 Mo. 98; Bruntmeyer v. Drainage Dist. No. 1, 196 Mo. App. 362. (7)   The defendant's instructions in this case, both in number and volume, fully and completely covered every theory of defense in a manner most favorable to the defendant.   The jury could not possibly have been misled by the plaintiff's said instruction, in view of the very numerous instructions submitting fully every theory of defense.   Patterson v. Evans, 254 Mo. 293; Meadows v. Ins. Co., 129 Mo. 76; Derousse v. West, 198 Mo. App. 307; Meily v. Railway Co., 215 Mo. 567; Johnson v. Traction Co., 176 Mo. App. 186; Austin v. Transit Co., 115 Mo. App. 152.

COX, P. J.—Action for damages alleged to have resulted from overflow of water on plaintiff's land caused by the negligent maintenance of dams in ditches excavated and being excavated for drainage purposes. Judgment against both defendants for $4000, and they have appealed.

The Little River Drainage District was organized for the purpose of draining certain lands and plaintiff's land was included in this district.   The drainage district let the contract to construct a certain portion of a main ditch described as Ditch No. 1 to Otto Kotchtitzky.   In prosecuting this work under this contract, Kotchtitzky constructed a dam in said ditch No. 1 and also, as claimed by plaintiff, built a dam across a lateral ditch No. 60 and also a dam across another lateral ditch No. 63 and it was claimed by plaintiff that these two lateral dams held the water in these collateral ditches and caused it to overflow his land and prevented his cultivating the same for the seasons of 1918 and 1919.

The defendant Drainage District was sought to be held on the ground that Kotchtitzky was its servant in doing the work and that it was therefore responsible for his negligence.   Among the defenses pleaded by the Drainage District and insisted upon by it at the trial

was the defense that a drainage district is not liable for negligence and cannot be sued.

We have just held at this term in the case of Greenwell et al. v. Wills and Son and Drainage District No. 6 of Pemiscot County, in an opinion by Judge BRADLEY, that a drainage district is not amenable to a landowner whose land is inside the district for damages caused by negligence in the prosecution of the work. The work being done in that case was the enlargement of a ditch previously constructed, while in this case, the work being done was the original construction of the ditch, but the rule should be the same in both instances. We refer to that case for a statement of the reasons for holding the district not liable for damages caused by negligence in the prosecution of the work and the authorities sustaining that position. For the reasons there stated, we hold that the defendant District is not liable in this case and the demurrer to the testimony filed by it should have been sustained.

The plaintiff's cause of action against defendant Kotchtitzky rests on two facts: The building of dams in the main ditch No. 1 and the lateral ditches Nos. 60 and 63 which caused his land to overflow, and unreasonable delay in completing the contract so that all dams could be removed and the ditches be permitted to drain his land.

The plaintiff's testimony tends to show that Kotchtitzky built the dams across laterals 60 and 63 and also that he built a dam across the main ditch No. 1 into which these two laterals opened. That these dams were built in the early part of 1918 and were maintained until September, 1919. That before these dams were put in, his land was dry but on account of these dams the water was held back and made to overflow his land and he was thereby prevented from cultivating it in either of the years 1918 or 1919. Proof of these facts constitute the basis of plaintiff's claim the ground upon which he sought recovery. From plaintiff's witnesses, either in direct or cross-examination, the following facts were elicited. Plaintiff's land had never been in cultivation and prior to

beginning the work on this drainage district was so swampy that it could not be cultivated. That it was the digging of these ditches in which the dams complained of were placed, and the drainage obtained by said ditches that had made his land dry enough to be cultivated at all. That the removal of the dams in laterals 60 and 63 would not have prevented the overflow unless the dam in ditch No. 1 into which these laterals opened was also removed. That in digging the ditches, it was usual for dams to be maintained in order to hold water enough to float the boats used in making the excavations. That the dam in No. 1 was used to hold water to float the boats used in that ditch and that ditch was not completed during the time for which damages were asked. Defendants' evidence showed that it was necessary to dam lateral No. 60 in order to enable the contractor to transport coal for use in operating the machinery, as it could not be transported by wagon. Plaintiff's evidence did not disclose why the dams in these laterals were built but he contented himself with showing merely that they were built and contributed to the overflow that caused the damages of which he complains.

Defendant Kotchtitzky filed a demurrer to plaintiff's evidence at the close of his case and renewed it at the close of all the evidence. Both of these were overruled and error is assigned by reason thereof.

In passing upon the court's action in this respect, we note that plaintiff's land was in the drainage district and had never been in cultivation and could not have been cultivated until drained by the ditches mentioned. All damages that might reasonably follow from the performance of the work in accordance with the plans of the drainage scheme adopted by the district were compensated for when the district was established, the ditches located and assessments of damages made. Plaintiff, therefore, stands upon a different footing from a man owning land outside of the district who might be damaged by the performance of the work, as was the case in Stanton-White Drainage Company v. Braden (Ark.), 208 S. W.

598, or a man inside the district whose land then in cultivation was damaged by some negligent act of the party doing the work, as was the case in Woods v. D. D. No. 2 (Ark.), 161 S. W. 1057, and Dredging Company v. Mabin (Ark.), 175 S. W. 400. In the Arkansas cases the party performing the work owed the landowner the duty from the beginning to use ordinary care to prevent injury to his property; but in this case no such duty rested on the contractor in the beginning because plaintiff's land was then a swamp and we know of no principle of law on which the contractor would be required to exercise any care to prevent spilling water on plaintiff's land which was already a swamp, until the work was completed. He could proceed in his own way without reference to the condition of land already swampy and which could not be used or cultivated until drained by the work then being done, because land already useless could not be damaged by an additional flow of water thereon. In this case, however, there was evidence tending to show that the work had progressed far enough that drainage had been provided for this land thereby and the land had been rendered fit for cultivation, and had been turned back into its original condition by the building of the dams of which complaint is made. This, however, standing alone did not make a case of negligence. Plaintiff should have gone farther and should have shown, at least, that the building of the dams was not necessary or proper in the prosecution of the work and that therefore the building of the dams and the consequent flood on plaintiff's land was caused by a negligent disregard of his rights. When, as in this case, it is shown that plaintiff's land is in the drainage district and unfit for cultivation and must remain so until drained by the very work in the prosecution of which the negligence is charged, then, before the owner of the land can make out a case for negligence against the party doing the work by his causing water to again flow on land that had been drained by reason of a part of the work already performed, he must do more than to merely show

the erection of dams and turning the water back on the land before the completion of the work. Under these circumstances, the doctrine of *res ipsa loquitur* does not apply and the proof of the building of the dams and the consequent flooding of the land does not speak for itself and convict the party who did it of negligence without any other proof. To make a case he must go further and show that the work had not been done in the usual or ordinary manner or was negligently done in some specific way or that the erection of the dams was not necessary.

The only other question in plaintiff's case is unreasonable delay in completing the work. The contract under which defendant Kotchtitzky was working, was a contract between him and the drainage district. He had no contract with plaintiff. The contract by its terms fixed the time of its performance and provided for the payment of damages to the district of $50 for each day of delay in its performance and also provided under what circumstances an extension of time could be secured. Plaintiff had no right to object to any steps taken by the contractor and the district under those provisions of the contract. The district was the only party who could complain, in the absence of a showing of collusion between the district and the contractor, and that condition was not shown in this case.

It follows that no case was made by plaintiff against the contractor and the demurrer to the evidence filed by him should have been sustained. The judgment is reversed. *Farrington* and *Bradley, JJ.*, concur.