L. J. Bohannon, et al., Appellants, v. Camden Bend Drainage District, et al., Respondents.—208 S. W. 2d 794.

Kansas City Court of Appeals. Opinion delivered February 9, 1948.

*Roy P. Swanson, James J. Waters, Arthur W. Rogers, William Aull, Jr., Blackmar, Newkirk, Eager, Swanson & Midgley* for appellants.

*E. A. Farris, Ike Skelton* and *Clifford B. Kimberly* for respondents.

*Milligan, Kimberly & Deacy* of counsel.

BLAND, J.—This action is brought to enjoin respondents from constructing and maintaining a ditch, and from lowering the level of a private lake, or otherwise interfering with appellants' property, and from carrying out a certain plan of reclamation. Defendants, respondents here, filed a motion to dismiss said action on the ground that the petition did not state facts sufficient to constitute a cause of action against defendants, and failed to state a claim upon which any relief may be granted. The motion was sustained by the trial court. From the judgment thereupon rendered in defendants' favor, plaintiffs appealed.

In substance, the allegations of plaintiffs' petition are as follows:

The petitioners are the owners, respectively, of the tracts of land in Ray County, Missouri, described; part of each of these tracts extends under Sunshine Lake, and the remainder of the tracts are contingent thereto. The Camden Bend Drainage District is a public corporation, created, organized and existing under and by virtue of an Act of the Legislature of the State of Missouri relating to Organizations of Drainage Districts by Circuit Courts, Article I, Chapter 79, R. S. Mo. 1939. Said Drainage District was incorporated by decree of the Circuit Court for Lafayette County, Missouri, and entered of record. The defendants Stover, Seward, Hilliard, Rogers and Stover are supervisors of the District, defendant Myers is the chief engineer, and defendant Gray is the contractor for said district. Defendant Myers has prepared a plan of reclamation for the district, which has been approved and adopted by the supervisors and is to be

carried into execution by defendant Gray, contractor; defendant Gray has entered into a contract with the district for the performance of the work therefor, and said plan has been filed in the same court where this action is instituted and is part of the proceedings of said district. That pursuant to said plan defendant Gray, at the direction of said supervisors and said engineer, is now constructing a ditch in said district in accordance with said plan, which ditch would drain the water from Sunshine Lake.

Sunshine Lake is a natural body of water several hundred acres in area. Many cabins and other improvements have been constructed by plaintiffs on their lands along the east bank of said lake for the accommodation and use of customers of the plaintiffs and for the plaintiffs; that such customers use such improvements for boating, swimming, fishing, hunting and other recreational activities; that said riparian lands are especially adapted to such use, and plaintiffs have constructed said improvements for such purposes, and have beautified the lake shore owned by them with shrubbery and trees, and have constructed docks, ovens, and other improvements for their use and for their customers; plaintiffs have dedicated the same for business purposes as a business enterprise and for their own comfort, convenience and pleasure.

Said district did not include the swamp, wet and overflowing lands or lands subject to overflow, nor did the Articles of Association and petition for decree of such incorporation include the whole of the area of such contiguous swamp lands subject to overflow. The said lands of plaintiff are more subject to overflow than the lands within the boundaries of said district, and are contiguous to the land described in said Articles of Association set forth in the petition for decree of incorporation, and in the decree. By reason of the failure to include plaintiffs' said lands within said district, said district did not include a majority of acreage of the whole area of the contiguous body of said swamp lands as provided in Section 12324, R. S. Mo. 1939 (quoted).

In accordance with the said purported plan filed in the same court and the operation thereof by the defendants they intend to take and will take through the construction and operation of said plan, water from said private lake, thereby depriving plaintiffs of their property without due process of law.

As a result of said purported plan plaintiffs' said land will be used by the district as a holding basin and for other works as set out in the plan; that the source of the water for said lake has always been a water shed several miles north and northwest thereof, and during rainy seasons the water flowing from said water shed will enter said lakebed in greater volume than can

be drained therefrom under the plan, in that ditches and culverts provided by the plan are insufficient to carry water from the lake as fast as, during such seasons, will enter said lake, and water therefrom will be impounded upon plaintiffs' said lands, which will thus be used by the district as a holding basin. Said lake is being converted thereby from a useful and beneficial property to a holding basin.

Pursuant to Section 12336, R. S. Mo., 1939, it was necessary for the commissioners appointed by the court to view the premises and determine the value of all the land and other property within or without the district to be used for rights-of-way, holding basins and other works set out in said plan, and to assess the amount of benefits and damages, if any, accruing to each parcel of land according to ownership by reason of carrying out and putting into effect said plan of reclamation. The commissioners appointed by this court did not determine such value of the land owned by plaintiffs to be used as a holding basin, or other works as set out in the plan, and did not assess the benefits or damages to plaintiffs' lands, all in direct violation of said statute.

Upon the filing of the Report of the Commissioners for said district it became incumbent upon the clerk of the Circuit Court of Lafayette County, Missouri to publish notice thereof once a week for three consecutive weeks in some newspaper published in Ray County, Missouri, wherein plaintiffs' said lands are situated, which notice is for the purpose of apprising plaintiffs of the filing of said Commissioners' Report as to the value of lands to be taken by said district for rights-of-way, holding basins for the district, and the assessments of benefits or damages accruing to plaintiffs' said lands. Said clerk failed to give notice to plaintiffs of the filing of the Report of the Commissioners, and plaintiffs were, therefore, never given legal notice of the filing of said report as provided by Section 12337, R. S. Mo., 1939.

Defendants, contrary to Section 12353, R. S. Mo., 1939, are attempting to take and use plaintiffs' said lands for rights-of-way, holding basins and other works of the district without first having their damage thereto assessed, and the value thereof appraised, and without paying plaintiffs damages accruing thereby and without paying plaintiffs the value of such lands so being taken; that said acts of defendants are unlawful and in violation of said section.

Defendants, in carrying out said plan and opening a ditch from said lake to Missouri River will lower the level of said lake below its natural and normal level, and will drain water therefrom to the great damage of plaintiffs, and will render said land and improvements of the plaintiffs useless and of little or no value. The level of said lake will be lowered so that little or no water therein

to be used by plaintiffs and their customers will remain, and their business of operating such pleasure resort will be permanently ruined and entirely destroyed. Said lake will be converted from a place and thing of utility to a low, swampy and wet piece of land, unfit for any purpose and will become a nuisance and an unhealthy, unsanitary menace, damaging to the health of plaintiffs, their families and the public generally.

Although the defendants know and have been notified that the plaintiffs will be thus damaged, defendants are putting into operation their said plan to drain said lake with the sole purpose to take water from the lands outside the district, and have designedly planned to divert said water without compensating the owners for the damages occasioned thereby; that defendant Gray is now excavating said ditch, and the danger and peril to plaintiffs as a result thereof is imminent; that the said lands of plaintiffs are not in said district, have not been condemned, and will be permanently and irreparably damaged and injured by the defendants without regard to the rights of plaintiffs; that the irreparable damage to plaintiffs will be permanent and the lands within the district will be benefited without paying the plaintiffs just and adequate compensation, and plaintiffs' lands are so being taken for public use without due process of law, and plaintiffs have no adequate remedy at law.

The defendants threaten to and will, unless restrained by the court, construct said ditch without the consent, and to the irreparable damage to the plaintiffs; that no proceedings have been taken by the defendants as required by law for the ascertainment and payment of plaintiffs in consequence of the construction and maintenance of said ditch, and the taking of water from said lake.

Plaintiffs pray that defendants be perpetually enjoined from establishing, constructing and maintaining said ditch and from, in any way, interfering with or lowering the level of said Sunshine Lake, or from, in any way, taking water therefrom, or interfering with plaintiffs' property and rights, and that judgment be rendered forbidding the opening and constructing of said ditch by the defendants, their agents and servants, and that defendants be enjoined from carrying out said plan of reclamation devised by said district, and for general relief.

In appellants' reply brief they move to strike parts of respondents' additional abstract of the record, which respondents filed March 28, 1947, the date of the filing of respondents' brief. The abstract of the record filed by respondents contains certified copies of the plan of reclamation referred to in appellants' petition, maps and drawings thereof and the decree of the circuit court approving the Report of the Commissioners mentioned in the petition in which decree and judgment the court determined all exceptions filed, approved the Re-

port.of the Commissioners with modifications, and held, among other things, that notice of the filing of the Commissioners' Report had been duly given and published according to law. Respondents contend that we can take judicial notice in this case of the records of the same court in the former proceedings mentioned and complained of in plaintiffs' petition. Appellants make general objection to the filing of respondents' abstract on the ground that its contents were not offered in evidence in connection with the motion to dismiss, not shown in the trial court, and not considered by that court in ruling on said motion. They, however, waive objection to the maps and drawings in the abstract showing the locations, etc.

Respondents have filed a motion to dismiss the appeal for the reason that the appellants' transcript was not filed in the office of the clerk of the lower court on the 4th day of January 1947, and appellants failed to serve respondents, or their attorneys of record, with a copy of the transcript in the manner and within the time provided by the code and rules of the court. It appears that a copy of the transcript was delivered to one of the attorneys for the respondents on March 21, 1947. The cause came on for argument in this court on December 21, 1947. The transcript in this case is short and is composed, largely, of a copy of the petition. It does not appear that the respondents have been injured or inconvenienced in any way by the failure to serve the copy of the transcript in the manner and within the time required by the statute and rules. We find there is no merit in the contention. Only in exceptional circumstances can an action be justly disposed of by dismissing a meritorious appeal. (Baldwin v. Desgranges, et al., 199 S. W. (2nd) 352.) The motion to dismiss the appeal is overruled.

The question which first presents itself to us is whether the petition on the record before us, is a collateral attack upon the validity and legal effect of the judgments and decrees of the court in incorporating the drainage district. In that connection let us first consider the decree of incorporation. The petition admits that in the same court where the present case is pending the defendant drainage district was organized as a public corporation under the pertinent statutes and by the decree of the circuit court entered of record. The petition, nevertheless, attacks the decree of incorporation because the plaintiffs' lands were contiguous to the lands within the district and were not included, although lower and more subject to overflow than the lands within the district, thereby, it is alleged, violating Section 12334, in that the district "does not include a majority of the acreage of the whole area of the contiguous body of swamp lands". Such an attack by individuals is not permissible. In State ex inf. McAllister v. Albany Drainage District, 280 Mo. 33, 62, 234 S. W. 339, it is said: "A drainage district is a municipal corporation, and the legality of its organization cannot be collaterally attacked or inquired into at the

suit of individuals. (citations)''. Section 12365 provides a method for annexation of additional and adjacent lands to the drainage district.

·Nor can such a decree of incorporation be collaterally attacked at all unless the record and the decree show on their face that the same was invalid. The petition and record before us present no such apparent defects in the decree of incorporation, and it must be presumed to be legal and valid in the present cause. We deem the present action a collateral attack on the decree of incorporation, and unauthorized by law. (Inter-River Drainage District of Missouri v. Henson, et al. 99 S. W. (2d) 865.)

Turning our attention next to the attack made by the petition on other proceedings by the district, we find the situation more involved. Article 1, Chapter 79, R. S. Mo. 1939, sets forth the procedure in the matter of drainage districts, including provisions for the articles of incorporation, notice thereof, approval, disapproval or modification thereof by the circuit court upon hearing, the decree of incorporation, election of supervisors, appointment of engineer by the supervisors, the report of a plan of reclamation by the engineer to the supervisors, the approval or modification of the plan by the supervisors, levy of taxes therefor, petitions, if any, by owners of overflow lands adjacent to the district to include such lands in the district, filing of the plan of reclamation with the circuit clerk of the same court, appointment of three commissioners by the said court on the petition of the supervisors, the viewing of the lands by the commissioners, including lands within and without the district to be acquired or used for the purpose of the plan, and the commissioners' assessment of damages and benefits, the filing of such Report of Commissioners in· the same court, publication of notice thereof in all counties concerned requiring any exceptions to be filed, the hearing of exceptions by the said court, the decree or judgment of such court on the report of the commissioners, and other provisions.

The petition, as stated, pleads the decree of the court establishing the defendant district as a drainage district and a public corporation under said chapter, pleads appointment of supervisors and engineer, preparation of a Plan of Reclamation by the engineer, approval of same by the supervisors, appointment by the court of the commissioners, making of the contract for improvement, and pleads the statutory duties of the commissioners prescribed in Section 12336, the failure of the commissioners to perform their duties as to plaintiffs' lands, and pleads the failure of the circuit clerk to publish notice in Ray County of the filing of the Report of the Commissioners. Plaintiffs also plead that defendants are now taking their property without compensation in violation of Section 12353. But the petition does not allege whether or not a hearing was had by the court on the Report of the Commissioners, nor upon the exceptions thereto, nor

whether or not the Report was approved by the court, nor, if so, what finding, if any, the court's decree contained in respect to the giving of publication of notice of the filing of such Commissioners' Report. It is this notice the petitioners allege was not given (Sec. 12337) which, it is alleged, "is for the purpose of apprising plaintiffs of the finding of such commissioners as to the value of lands to be taken by said drainage district to be used for rights-of-way, holding basins, and the assessment of benefits or damages accruing to plaintiffs herein described."

The published notice of the filing of the Report of the Commissioners of the drainage district is binding upon all persons who may have objections to the Report of the Commissioners. (State ex rel. Scott v. Trimble, 308 Mo. 123, 135, 138, 272 S. W. 66.) If notice of the filing of the Commissioners' Report referred to in plaintiffs' petition was duly given and published, and all the exceptions thereto filed were duly heard by the court, plaintiffs are bound by such notice, and by the decree of the court pursuant thereto approving the Commissioners' Report.

While, as stated, plaintiffs allege in their petition that no such notice was given or published, the respondents have filed herein their "Abstract of the Record", which purports to contain the decree of the court adjudging all exceptions filed and approving the Report of the Commissioners referred to in the petition, with modifications, and in that decree the court finds that: "Notice of the filing of said Commissioners' Report was given and published according to law", respondents contend that this court should take judicial notice of that decree as a part of the records of the other case, and of which the trial court could properly take judicial notice, and that we should consider the same on appeal in connection with the sufficiency of plaintiffs' petition.

Under the present practise there is no such thing as an abstract of the record either on the part of the appellant or the respondent. We do not construe respondents' action in furnishing what is contained in the document that they have entitled "Respondents' Abstract of the Record" as serving any other purpose than to acquaint us with the fact that there are additional matters shown by the records of the trial court, not incorporated in appellants' transcript, of which matters we should take judicial notice. However, it is well settled that unless properly made a part of the record the appellate court will not take judicial notice of proceedings in the lower court. (4 C. J. p. 561; Fitzmaurice v. Turney, 214 Mo. 610; Spurlock v. Mo. Pac. R. R. Co., 76 Mo. 67; Key v. Key, 93 S. W. (2nd) 256; Scheufler v. Continental Life Ins. Co., 169 S. W. (2nd) 359; Walker v. Ross, 71 S. W. (2nd) 124; Hess v. Hess, 183 S. W. (2nd) 560; Richards Brick Co. v. Wright, 82 S. W. (2nd) 274; Smith v. Berryman, 199 S. W. 165.)

In support of their contention that we should take judicial notice of matters contained in their abstract of the record respondents cite Thompson v. Scott, et al. 19 S. W. (2d) 1063. However, we find that in that case the Supreme Court knew of certain records in the trial court to be in existence by means of taking judicial notice of records in a different but inter-related case in the Supreme Court. That is not the situation in this case. We have nothing in our records to which we can refer in order to consider the matters contained in respondents' abstract of the record. It was necessary for respondents, if they desired us to notice these matters, to have seen to it that the proper steps were taken for them to have been incorporated in the record, and that they were so incorporated. Under the circumstances we cannot take judicial notice of the matters contained in the so-called abstract.

However, even were we to take judicial notice of these records they are not conclusive on the plaintiffs. They plead in their petition, expressly, that the clerk failed to give the notice in question.

Defendants contend that the petition in this case fails to state any claim upon which any relief could be granted, for the reason, among others, that the Camden Bend Drainage District is a public corporation; that it is a sub-division of the state, and acting for and on behalf of the state and, in effect, this is a suit against the state. It is the law that a drainage district is a political sub-division of the state, under its police powers has the right to create, and as such sub-division it has authority to exercise prescribed functions of government in the district and, in carrying out the objects of its incorporation, it is exercising the police powers of its state. (Morrison v. Morey, et al. 146 Mo. 543; Mound City Land and Stock Co. v. Miller, 170 Mo. 240). ''Regulations enacted under the inherent power of the state to protect the lives and secure the safety of the people are enacted under the police power and do not constitute a taking under the power of eminent domain, although they may interfere with private rights without providing for compensation. Such regulations, however, must be reasonable, and the legislature cannot, under the guise of the police power, impose unreasonable or arbitrary regulations which go beyond that power and, in effect, deprive a person of his property within the purview of the law of eminent domain. The legislature may, under the police power, within the limitations stated, authorize the abatement of a nuisance and the destruction of property constituting the same, and make other reasonable regulations to promote the public health, and general welfare of the community''. (20 C. J. pp. 518, 520, 521.) On the pages of 20 C. J. following are mentioned a number of instances where the state, or its sub-division, in the exercise of its police powers, has the right to take or damage private property without compensating the owners therefor. (See also 18 Am. Juris. p. 777.) In

such cases the damages suffered are considered to be *damnum absque injuria.*

It is often difficult to distinguish between cases where the state is acting purely and solely under its police powers, and under its power of eminent domain, but it can be stated that private property may not be taken or damaged for public use by the state, or any of its subdivisions, where redress could have been had at common law had the taking or damage not been authorized by some legislative enactment. (Rude v. The City of St. Louis, 93 Mo. 408, 415, 416; Anderson v. Inter-River Drain. and Levee Dist., 274 S. W. 448; Sigler v. Inter-River Drain. Dist., 311 Mo. 175.) The provision of the constitution "that private property shall not be taken or damaged for public use without just compensation", (Sec. 26, Art. 1, Mo. Constitution—Sec. 21, Art. 2 of the old Constitution) is binding upon the state as well as on others having the powers of eminent domain. (20 C. J. p. 645.)

It is well settled that at common law a riparian owner on a lake has the right to the continuance of the lake in its natural state. (Kennedy v. Niles Water Sup. Co., 139 N. W. (Mich.) 241; Valparaiso City Water Co., v. Dickover, 46 N. E. (Ind.) 591; Lakeside Irr. Co. v. Kirby, 166 S. W. (Tex.) 715; Proprietary Mills v. Braintree Water Sup. Co., 21 N. E. (Mass.) 761; City of Emporia v. Soden, 25 Kans. 410.)

We are of the opinion that the petition states a cause of action wherein it is alleged that defendants in carrying out the plan of opening a ditch from the lake, will lower the lake below its natural and normal level, rendering the land of plaintiffs useless and of little or no value; that the level of the lake will be lowered so that little or no water therein for use will remain; that the lake will be converted from a thing of utility to a low, swampy and wet piece of land, unfit for any purpose, and will become a nuisance and an unhealthy, unsanitary menace, damaging to the health of plaintiffs and their families. If these allegations are true they show that, if the plan is carried out, the result will constitute a taking of plaintiffs' proprietary interest in the lake or the waters thereof, which taking is prohibited by the constitution until compensation is made therefor. (Houck v. Little River Drain. Dist., 119 S. W. (2nd) 826; Bruntmeyer v. Squaw Creek Drain. Dist., 194 S. W. 748; Hogge v. Drain. Dist. No. 7, 26 S. W. (2nd) 887; State ex rel. v. Allen, 250 S. W. 905, 907; 18 Am. Juris. pp. 781, 782, 800.)

While the state cannot be sued without its consent, and there is no statutory provision authorizing this suit, nevertheless, if the taking or damages are within the constitutional provisions, that provision is self-enforcing. (Anderson v. Inter-River Drainage Dist., supra, l. c. 455.)

We have examined the cases cited by the defendants and find them not in point. In the case of Max v. Bernard-Bolcknow Drain. Co.,

32 S. W. (2nd) 583, plaintiff sued for damages on account of defendant. A drainage district, in carrying out its plan of reclamation, constructed certain ditches causing dirt and debris to be washed out of the ditches and carried down the river for a mile or more below the drainage district into plaintiff's millpond and forebay so that the flow of the river below the dam had been reduced and diminished, rendering the water power machinery connected with plaintiff's grist mill useless for the purpose for which it was constructed. It was held in that case that plaintiff had merely a license from the state to construct the dam across the river, which license or permission was subject to revocation, and the court stated, l. c. 585.: ''The right so granted to construct a dam across a natural stream was not indefeasible, but was in legal effect subject at all times to the superior and paramount right of the state in the exercise of its police power for the protection of the public health and the promotion of the public welfare to use such stream for public purposes, as in this instance, the drainage of wet and overflowed lands. * * * Nor can such permit be construed as a contract to which the state is a party and which could not be impaired by any subsequent legislative or governmental act of the state''. In other words, it was held in that case that plaintiff had no interest in the dam such as to give him right to compensation for damages resulting from the act of the drainage district. The facts in that case are not comparable to those in the case at bar.

In Anderson v. Inter-River Drain. Dist., supra, cited by defendants, the court held that plaintiff was not entitled to compensation for the flooding of his land by surface water which defendant, at common law, had a right to divert from its property.

Defendants claim that the petition fails to state a claim upon which any relief could be granted, for the reason, that the allegations are inconsistent and self-destructive. In this connection defendants say that the petition in one paragraph charges that the drainage ditch will not be sufficient to carry off the water which will accumulate in the lake during rainy seasons; that the water therefrom will be impounded on plaintiffs' land and thus be used by the district as a holding basin and, in another paragraph of the petition, it is alleged that the ditch will drain the lake so as to render useless the land leaving the land a low swampy and wet place. As we construe the allegations of the petition there is no inconsistency. The petition alleges that the ditch will not be sufficient to carry off the water flowing into the lake during the rainy seasons but in normal times it will drain the lake below its natural level. There is no necessary inconsistency between these two allegations. Whether the failure to make the ditch sufficient to drain the excess water off in rainy seasons will make of the lake a holding basin, we need not say. In fact, it is not very seriously urged by the plaintiffs that the district is under any duty to

construct a ditch sufficient to drain the excess water in the lake oc-
curring as a result of rains falling in the rainy seasons. We think
that the gist of plaintiffs' cause of action is the drainage of the lake
below its natural level. It is claimed that under the plan it is shówn
that no damage will be done to plaintiffs' land as alleged. However,
the plan is shown in defendants' so-called abstract of the record which,
as before stated, we cannot notice.

There is no contention but that, if plaintiffs are entitled to sue, in-
junction is not the proper remedy.

The judgment is reversed and the cause remanded.

*Cave, P. J.,* concurs. *Dew, J.,* concurs in result.