**Chester PAGE and Frances Page, His Wife, Appellants,**

v.

**The METROPOLITAN ST. LOUIS SEWER DISTRICT, a Municipal Corporation and Political Subdivision, Respondent.**

No. 50104.

Supreme Court of Missouri,

Division No. 1.

April 13, 1964.

Librach, Heller, Byrne & Weber, William P. Byrne, St. Louis, for appellants.

Thompson, Mitchell, Douglas & Neill, James M. Douglas, David F. Ulmer, St. Louis, for respondent, The Metropolitan St. Louis Sewer Dist.

HOUSER, Commissioner.

This is an appeal from the judgment of the Circuit Court of the City of St. Louis sustaining the motion of Metropolitan St. Louis Sewer District, hereinafter "MSD," to dismiss and dismissing the following petition filed against MSD by Chester and Frances Page:

### "SECOND AMENDED PETITION FOR MANDATORY INJUNCTION.

#### "COUNT I.

"Plaintiffs, for Count I of their cause of action, state:

"1. That they are husband and wife and owners of a certain parcel of land known as Lot 58 of Robinwood subdivision known and numbered as 705 Derhake Road, Florissant, Missouri.

"2. That the defendant is now and at all times hereinafter mentioned was a municipal corporation duly organized and existing under and by virtue of Law, with an office and place of business in the City of St. Louis, Missouri, and engaged in the business of constructing, supervising, maintaining, controlling and regulating sewers and ditches in and around the Metropolitan St. Louis area; that at all times hereinafter mentioned defendant controlled, supervised, maintained and regulated the hereinafter described drainage ditch.

"3. Plaintiffs further state that there is located adjacent to their said property a ditch used for drainage purposes, said ditch being an easement in and upon the property of these plaintiffs and their adjoining property owner, said easement being an easement of record in Book 3305, Page 603 in the Office of the Recorder of Deeds for St. Louis County, Missouri.

"4. Plaintiffs further state that since and before May 1960, said ditch has gradually and constantly widened and deepened causing the property of plaintiffs to crumble, collapse and wash away, thus diminishing the size of plaintiffs' lot; that said ditch constituted a public nuisance, and private nuisance, is dangerous to the health and welfare of the residents of the community and to the plaintiffs; that water from said ditch constantly floods and overflows into and upon plaintiffs' land and property; that these plaintiffs have been deprived of their right of lateral support for their property, and will in the future be deprived of their right of lateral support; that, to date, by virtue of being deprived of their right of lateral support, plaintiffs have been damaged in the sum of FOURTEEN THOUSAND FIVE HUNDRED DOLLARS ($14,500.00) that plaintiffs' are thereby unable to rent said premises because of the conditions herein stated and will in the future incur continuing damages in the sum of ONE HUNDRED DOLLARS ($100.00) per month, and are in danger of suffering irreparable damage to their property if the conditions herein mentioned are allowed to

exist; that, although defendant has long known of the aforesaid condition, it has willfully and wrongfully failed and refused to take any steps to remedy these conditions so as to prevent further collapse of ground and loss of property to these plaintiffs and a flooding of their land and property; although requested to do so; that plaintiffs have no adequate remedy at law.

"WHEREFORE, for Count I of their Petition, plaintiffs pray an order of this Court awarding them FOURTEEN THOUSAND FIVE HUNDRED AND NO/100 DOLLARS ($14,500.00) damage for the loss of their property, and further, an order directing and requiring defendant to fill in said ditch and to build a retaining wall to provide plaintiffs with lateral support for their property, and for such further orders as this Court may deem just and proper, together with their costs expended herein.

### "COUNT II.

"Plaintiff, CHESTER PAGE, for Count II of his Petition, states:

"1. Plaintiff hereby incorporates by reference all of the allegations of Count I, and further states:

"2. That all of the acts and omissions of Defendant which plaintiffs herein complain were performed and committed in a manner that was and is willful, wrongful, wanton, malicious, and inhuman.

"3. That by reason thereof, plaintiff, CHESTER PAGE has been caused great worry about the safety of his wife, his children, persons on and about said premises, himself and his property, and has suffered and will in the future suffer great mental pain and mental anguish, all to his damage in the sum of TWO THOUSAND DOLLARS ($2,000.00).

"WHEREFORE, plaintiff, CHESTER PAGE, prays judgment against defendant on Count II in the sum of TWO THOUSAND DOLLARS ($2,000.00).

### "COUNT III.

"Plaintiff, FRANCES PAGE, for Count III of her Petition, states:

"1. Plaintiff hereby incorporates by reference all of the allegations of Count I, and further states:

"2. That all of the acts and omissions of Defendant which plaintiffs herein complain were performed and committed in a manner that was and is willful, wrongful, wanton, malicious, and inhuman.

"3. That by reason thereof, plaintiff FRANCES PAGE has been caused great worry about the safety of her husband, her children, persons on and about said premises, herself and her property, has suffered and in the future will continue to suffer great mental pain and mental anguish; all to her damage in the sum of FIVE THOUSAND DOLLARS ($5,000.-00).

"WHEREFORE, plaintiff, FRANCES PAGE, prays judgment against defendant on Count III in the sum of FIVE THOUSAND DOLLARS ($5,000.00)."

MSD's motion to dismiss alleged that the petition failed to state a claim upon which relief could be granted in that defendant is a political subdivision of the State of Missouri exercising governmental functions and is not subject to suit upon the claim stated in the petition. Following the dismissal of the petition plaintiffs appealed.

We have jurisdiction for the reason that the amount in dispute exceeds the sum of $15,000.

In support of its position that the court erred in sustaining the motion to dismiss on the theory of governmental immunity, appellants make four points:

I. That the Plan of MSD, page 1, Art. 1, § 1.010, establishing MSD, vests it with "power to * * * sue and be sued * *." Appellants contend this gives them the unqualified right, not modified elsewhere in the Plan, to maintain a suit against MSD.

II. That the maintenance of sewers is not a governmental function but is a ministerial function for which a municipality may be liable in damages for negligence. The contention is that MSD assumed control over a natural watercourse and used it for drainage purposes with a resulting injury to them, thereby engaging in a ministerial function. They cite Lucas v. City of Louisiana, Mo.App., 173 S.W.2d 629, and Windle v. City of Springfield, 320 Mo. 459, 8 S.W.2d 61, in support of this contention.

III. That the doctrine of governmental immunity does not apply in a suit for damages resulting from the maintenance of a nuisance. Appellants cite Rodgers v. Kansas City, Mo.App., 327 S.W.2d 478; Windle v. City of Springfield, supra, and Bungenstock v. Nishnabotna Drainage Dist., 163 Mo. 198, 64 S.W.2d 149, on this point.

IV. That the dismissal of appellants' petition amounts to a taking of private property for public use without just compensation, in violation of Article I, Section 26, Constitution of Missouri 1945, V.A.M.S., citing Bruntmeyer v. Squaw Creek Drainage Dist. No. 1, 196 Mo.App. 360, 194 S.W. 748.

The circuit court did not err in dismissing the petition on the ground of governmental immunity.

### I.

█ Section 1.010 of the Plan, vesting MSD with the power to sue and be sued, does not authorize an action against it for damages for negligence or nuisance, because it contains no express agreement that MSD be liable on such claims. 81 C.J.S. States § 130, p. 1141, fn. 94. There is a marked difference between waiver of immunity of MSD from an action and waiver of immunity of MSD from liability for damages for the torts of its officers and agents. Todd v. Curators of University of Missouri, 347 Mo. 460, 147 S.W.2d 1063; Bush v. State Highway Commission, 329 Mo. 843, 849, 46 S.W.2d 854, 856. An "authorizing" statute in this context would

mean a statute which specifically provides for the payment of damages caused by the negligence, etc. of the officers and agents of MSD. Hill-Behan Lumber Co. v. State Highway Commission, 347 Mo. 671, 148 S.W.2d 499, 500. There is no such statute or constitutional provision.

### II.

█ The defendant, a metropolitan sewer district organized for the purpose of providing adequate sewer and drainage facilities within its boundaries, established by vote of the people in the district pursuant to Article VI, Section 30 of the Constitution of Missouri, 1945, is a public corporation, (§ 1.010, Plan of the Metropolitan St. Louis Sewer District) exercising only governmental powers and engaging in the performance of purely governmental functions, clothed as such with the state's immunity from tort liability, in the absence of express constitutional or statutory provisions to the contrary. State ex rel. Hausgen v. Allen, (en banc) 298 Mo. 448, 250 S.W. 905; City of Hardin v. Norborne Land Drainage Dist., 360 Mo. 1112, 232 S.W.2d 921; Anderson v. Inter-River Drainage and Levee Dist., 309 Mo. 189, 274 S.W. 448; Arnold v. Worth County Drainage Dist. No. 1, 209 Mo.App. 220, 234 S.W. 349; Tant v. Little River Drainage Dist., 210 Mo.App. 420, 238 S.W. 848. This is the general rule. 28 C.J.S. Drains § 51a, p. 389.

█ The argument that the maintenance of sewers is not a governmental but is a ministerial function for which a *municipality* may be liable in damages for negligence stands for disapproval, as applied to the instant facts. While in the broadest sense of the term a metropolitan sewer district is a municipal corporation it is not a municipal corporation in the restricted sense in which cities, towns and villages are so considered. Fort Osage Drainage Dist. of Jackson County v. Jackson County, Mo.Sup., 275 S.W.2d 326, 329; Cullor v. Jackson Township, Mo.Sup., 249

S.W.2d 393, 396; Hausgen v. Elsberry Drainage Dist., Mo.App., 245 S.W. 401, 404. Cities, towns and villages exercise both governmental and private, proprietary, ministerial functions, and sometimes are subjected to liability for negligence in connection with the exercise of the latter functions, as indicated by the cases cited by appellants. See the discussion in D'Arcourt v. Little River Drainage Dist., 212 Mo.App. 610, 245 S.W. 394, 396. MSD, which operates under the police power of the state in the interest of the public health, safety and welfare, see Drainage District No. 48 of Dunklin County v. Small, Mo.Sup., 318 S.W.2d 497, [5], 1. c. 502, is in effect an arm of the state exercising exclusively governmental functions. It has no private, proprietary functions to perform, State ex rel. Hausgen v. Allen, supra, and as a governmental agency or instrumentality is not liable for negligence in the maintenance, control and regulation of the sewers, ditches and drains under its jurisdiction any more than the state would be liable if it were maintaining them. The powers and responsibilities of MSD differ from those of cities, towns and villages, State ex rel. Hausgen v. Allen, supra, 250 S.W., 1. c. 907, [3]; Lamar v. Bolivar Special Road Dist., Mo.Sup., 201 S.W. 890; Zoll v. St. Louis County, 343 Mo. 1031, 124 S.W.2d 1168, 1172. This serves to distinguish the cases of Lucas v. City of Louisiana and Windle v. City of Springfield, supra.

### III.

Likewise for disapproval, and for the same reasons, is appellants' contention that the doctrine of governmental immunity does not apply in a suit for damages resulting from the maintenance of a nuisance. MSD partakes of the state's sovereignty with respect to tort liability for negligence and there is no logical reason why it should not enjoy the same immunity with respect to the tort of nuisance. Bingham v. Board of Education, 118 Utah 582, 223 P.2d 432; Buckholtz v. Hamilton County, 180 Tenn. 263, 174 S.W.2d 455; Braun v. Trustees of Victoria Independent School Dist., Tex. Civ.App., 114 S.W.2d 947. The cases cited by appellants, Rodgers v. Kansas City and Windle v. City of Springfield, supra, dealing as they do with the liability of cities and not with the liability of an arm of the state government which exercises strictly governmental functions, are not authority for appellants' proposition. Bungenstock v. Nishnabotna Drainage Dist., 163 Mo. 198, 64 S.W. 149, is not controlling. The facts are different. In Bungenstock the lands damaged were located outside the district. There was an appropriation of land by way of condemnation, followed by further damages to the land as a result of negligence in the plans and negligent conduct in the additional work undertaken. As pointed out in State ex rel. Hausgen v. Allen, supra, 250 S.W., 1. c. 907, it was "not [so] much a question of negligence as it was the further appropriation of plaintiff's property to a public use, without compensation." Here appellants did not waive the tort, acquiesce in the taking and sue under the constitution on a theory of condemnation in reverse. To the contrary, their whole theory of the case is that of tort liability for consequential damages.

### IV.

Appellants' last point is that *the dismissal of the petition* amounts to a taking of private property for public use without just compensation. This point is not before us for review. It was not appellants' position at the time they filed their petition that MSD maintained and controlled the ditch in such a manner as to violate their constitutional rights under Art. I, Section 26 of the constitution. The taking or damaging of appellants' property for public use without just compensation was not referred to in the petition. In order to raise a constitutional question in the appellate court it is necessary to raise it at the earliest moment in the trial court, but this appellants did not do. It was not raised in any manner or at any stage in the trial court. It is a new issue, raised

for the first time in appellants' brief; an "afterthought on appeal." City of St. Louis v. Butler Co., 358 Mo. 1221, 219 S.W.2d 372, 376, [6].

■ In their reply brief appellants raise another new point by their assertion there for the first time that a sewer district is not entitled to raise the defense of governmental immunity with respect to the other relief they seek, a mandatory injunction, and that they are entitled to a hearing on this phase of their petition. "Issues submitted in an appellant's brief on original submission are not to be enlarged by presentations in a reply brief as a respondent is entitled to an opportunity to answer an issue presented by an appellant." State ex rel. Houser v. St. Louis Union Trust Co., Mo.Sup., 248 S.W.2d 592, 594, and cases cited; Edwards v. Durham, Mo.Sup., 346 S.W.2d 90, 98.

■ In their reply brief appellants, for the first time on this appeal, also ask for a re-examination of the doctrine of governmental immunity, attacking it as an archaic vestige of the law of long ago, an ancient sham that should be wiped out, etc. The issues raised in the original brief are not thus to be enlarged, under the cases just cited. If and when the court undertakes to re-examine that doctrine it will be under circumstances where both sides have the opportunity to fully explore the subject in their briefs.

■ The record does not show that any error was committed by the trial court against the appellants, materially affecting the merits of the action, and therefore we affirm the judgment. In the interests of justice, however, considering the facts alleged in the petition, which indicate that appellants' property was taken (or damaged) and that such taking or damage was inflicted by the state, for a public use, it is not amiss to suggest the possibility of proceeding under the procedure sometimes

referred to as condemnation in reverse or inverse condemnation, under the constitutional provision, Article I, Section 26, "That private property shall not be taken or damaged for public use without just compensation." This provision is binding upon the state as well as others having the power of eminent domain, 29 C.J.S. Eminent Domain § 97, including drainage districts. Southwestern Bell Tel. Co. v. Drainage Dist. No. 5, 215 Mo.App. 456, 247 S.W. 494. While the state cannot be sued without its consent, and there is no statutory provision authorizing such suits, nevertheless, "if the injury alleged is a damage within the constitutional provision, that provision is self-enforcing." Anderson v. Inter-River Drainage and Levee Dist., 309 Mo. 189, 274 S.W. 448, 455. The right of a property owner to recover compensation from a drainage district under the constitutional provision and the limitations of the right are recognized and stated in these cases: Anderson v. Inter-River Drainage and Levee Dist., supra, 274 S.W., l. c. 455 [5]; Sigler v. Inter-River Drainage Dist., 311 Mo. 175, 279 S.W. 50; Millhouse v. Drainage Dist. No. 48, Mo.App., 304 S.W. 2d 54, 57; Bohannon v. Camden Bend Drainage Dist., 240 Mo.App. 492, 208 S.W. 2d 794; Houck v. Little River Drainage Dist., 343 Mo. 28, 119 S.W.2d 826; Bruntmeyer v. Squaw Creek Drainage Dist. No. 1, 196 Mo.App. 360, 194 S.W. 748; Schalk v. Inter-River Drainage Dist., Mo.App., 226 S.W. 277; Southwestern Bell Tel. Co. v. Drainage Dist. No. 5, supra; Beetschen v. Shell Pipe Line Corp., Mo.App., 248 S.W. 2d 66, 71, [5].

Judgment affirmed.

COIL and WELBORN, CC., concur.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.